OSTLAND v. PORTER.

1.  APPEAL—EXCLUSION OF EVIDENCE—SUBSEQUENT ADMISSION.

    The refusal to allow a witness to testify as to a particular point cannot be urged as error when other witnesses subsequently testified fully to the same point.

2.  PAUPERS—REMOVING SMALL-POX PATIENT TO COUNTY PEST-HOUSE—MEDICAL ATTENTION TO PERSON NOT A PAUPER—IMPLIED CONTRACT TO PAY PHYSICIAN.

    Simply removing a person affected with small-pox, who is not in indigent circumstances, to a county pest-house; by order of the county commissioners, will not render him a pauper, and he may be held liable for medicines and medical attendance furnished by a physician who

was employed by the county to attend paupers, when he accepts such services without objection and receives the benefit thereof.

Filed October 10, 1885.

Appeal from the district court of Burleigh county.

*David Stewart,* for appellant.

A public officer whose duties and compensation are provided by law, cannot maintain an action for extra compensation promised by a party.

Hatch v. Mann, 15 Wend. 41; Smith v. Whildin, 10 Pa. St. 281; Warner v. Grace, 14 Minn. 487; Parker v. Newland, 1 Hill, 87; Dillon Mun. Corp. 234.

The court erred in refusing to give the following instructions: "That if the defendant was under duress by order of the county commissioners of Burleigh county, and was treated by plaintiff under their orders, the plaintiff cannot recover." Sackett's instructions, Sec. 13; Griel v. Marks, 51 Ala. 566; State v. Gibbons, 10 Ia. 117; Kendall v. Brown, 74 Ill. 232; Thompson Chg'ng Juries, Sec. 132.

The court erred in charging the jury. "It seems that that there were some services rendered before he went to the pest-house;" it determined issues of fact upon which the evidence was conflicting, the court thus assuming the authority of the jury. Bowersock v. Winters, 14 N. W. 121; Shilletto v. Sampton, 15 N. W. 572; Sackett's Instructions to Juries, Sec. 14, citing Russell v. Minteer, 83 Ill. 150; Sier v. The City, 41 Ia. 353; Siebert v. Leonard, 21 Minn. 442.

The court erred in instructing the jury as follows: "They can take any man there; they have a right to take a man out of his own house, if he has the small-pox or a contagious disease, and take him to the pest-house; then the question is, does it follow under this employment, under this provision which has been made, that the services rendered to any man that is taken there are to be paid by the county. Sackett's Instructions to Juries, Sec. 10, citing Newman v. McComas, 43 Md. 77, and Evans v. George, 80 Ill. 51, and 20 N. W. 872, and case there cited.

*George P. Flannery*, for respondent.

All of the issues having been submitted to the jury and a verdict having been rendered the judgment entered thereon ought not to be disturbed unless it is apparent upon the record that error injurious to the appellant was committed in the trial of the cause in the court below. N. C. & S. C. Co. v. Kidil, 37 Cal. 308; Kisling v. Shaw, 33 Cal. 447; Clayton v. West, 2 Cal. 382; Eisley v. Malchow, 2 N. W. Rep. 233; Yates v. Shepardson, 27 Wis. 238; McDonough v. Sutton, 35 Mich.

The rule is believed to be that error in excluding the testimony of a witness is cured by afterwards permitting the witness to testify as to the matter. New Trials and Appeals, Hayne, Vol. 1, Sec. 18, 49 Cal. 381; 48 Cal. 82-3; 22 Cal. 545-6; St. Maries v. Pallys *et al.* 47 Wis. 67; Sarah Ann Cual v. Samuel Snover, 38 Mich. 562. And is also cured by allowing other witnesses to testify to the same point. New Trials and Appeals, Hayne, Vol. 1, Sec. 108, 50 Cal. 627-8; 47 Cal. 535; Davis v. Town of Fulton, 52 Wis. 657.

The appellant by his answer and in his evidence having admitted that he knowingly received the benefit of the services and medicines of the respondent the law raises the presumption that he promised to pay for what he accepted to his own advantage. Bishop on Contracts, Sec. 75, and cases cited, also Sec. 84; Parsons on Contracts, Vol. 2, p. 54, (Fifth Ed.)

And the burden of providing that the respondent was paid for his services and medicines so furnished in the manner alleged was upon the appellant as he had the affirmative of that issue. Shelton v. Smith, 5 Gray, 400; Greenleaf Evidence, Vol. 1, Sec. 74; Best on Evidence, Vol. 1, Sec. 269. And the charge as given was more favorable to him then he was enabled to. But of this he cannot complain. Bethel v. Mathews, 13 Wal. 1; Comstock v. Smith, 20 Mich. 338; Newton v. Allis, 16 Wis. 210.

I do not understand that the authority of the commissioners to act in such cases is denied, nor that they by removing the appellant to the hospital exceeded their authority as a board of health. If they did not exceed their authority the

appellant was not under duress in the sense in which it would effect his contract express or implied.   Civil Code, Sec. 880.

PALMER, J.   This is an action brought to recover the sum of $343 which the respondent claims is due him from the appellant for medicine and professional services rendered during the year 1882.   The case was tried by jury, and verdict was rendered for the plaintiff for the amount claimed in the complaint.   Motion for new trial was denied, and the case passed to the supreme court.   It appears from the record that upon the trial of the cause the plaintiff was examined as a witness in his own behalf, and upon his cross-examination various questions were asked him by defendant's counsel, which were objected to by plaintiff, and excluded by the court; and the exclusion of this evidence is the basis for the first seven assignments of error. It seems, also, from the record, that the evidence which was excluded, and which forms the basis of the first six assignments of error, was subsequently offered by other witnesses and admitted without objection.

Without attempting to determine, then, whether or not the court below erred in excluding the testimony in the first instance, it seems the appellant, during the trial, had the benefit, from the same and other witnesses, of all the testimony thus excluded.   And this, we think, would effect a cure, even if error had previously been committed upon this branch of the case to the prejudice of appellant.   St. Maries v. Polleys, 47 Wis. 67; S. C. 1 N. W. Rep. 389.

That the court erred in excluding the question which is the basis of the seventh assignment of error was not strenuously insisted upon by counsel in argument, and we think it would be difficult to find authority to allow such a question in the effort to ascertain the value of services such as appear to have been rendered under the peculiar circumstances of this case. The question asked witness, as appears by the seventh assignment of error, was properly excluded.

The other assignments of error refer exclusively to the refusal of the court to charge as requested by appellant in error, and the charge as given.   It appears from the record that the

respondent in error was a practicing physician in Bismarck, in the county of Burleigh, in the year 1882; and at that time was under contracts with the commissioners of said county to attend all paupers who needed his professional attention, that during said year the county was visited by a small-pox epidemic; that the appellant was a victim of that disease, and as such was, upon the order of the board of cour ty commissioners, removed to the hospital, where, in company with about twenty-eight other patients, he was cared for by the respondent for the period of four weeks. It is not claimed that the appellant was a pauper or county charge, unless the order and act of his removal to the pest-house by the board of county commissioners, acting as a board of health, constituted him such; thereby casting upon the county the responsibility of furnishing to him the necessary medical treatment, and a consequent obligation upon appellent to render these services as a part of his duties under and by virtue of his contract with the county board.

While it is not and, as we think, cannot be seriously contended that the county commissioners had not the authority, under the law, to remove a small-pox patient to a hospital provided for such use, as was done in this case, still it is insisted that such act by the board operated as an entire assumption of control and management of the person so removed, and, as a consequence, liability for care and treatment. In other words, that, in the exercise and discharge of their duties as a board of health, their act of removal of a small-pox patient from a locality where the greatest facilities existed for the spread of such disease to a locality where it could be successfully treated, and the public relieved from the danger of constant contact with the scourge, from which an ordinary mortal instinctively shrinks, that such act was in effect placing appellant under such restraint or "duress" as would make him a county charge, and compel the respondent to accept the sum paid by the county as compensation and satisfaction of the claim for which this suit was brought. That the removal of appellant to the place provided for patients afflicted with this disease was an act on the part of the officers which in a measure restrained him of some

of the privileges exercised by our citizens cannot be doubted; yet we are not able to accord to that act the effect which counsel claim for it. That appellant, after his removal, was under duress we may safely concede; for any restraint by a stronger power over a weaker, is duress. The board of health removed appellant to the hospital against his will. In this he was under restraint; and if restraint in this particular operated to deprive appellant of all the rights and privileges accorded to American citizenship, then the position claimed by counsel should be sustained. But from aught that appears in the record, appellant was left at perfect liberty to exercise every right and privilege which he otherwise possessed, with the simple exception of the right of circulation. With this single exception no privilege of his seems to have been abridged in any manner. Surely he was at liberty to exercise his own judgment as to who should treat him professionally, and there is perhaps no privilege concerning which an intelligent person is more sensitive than the right to choose who shall be his medical adviser and attendant during a struggle for the maintenance of human existence. Such may have been this case, and certainly the record is silent concerning any restraint attempted to be exercised by the board of health over the appellant, with the single exception above indicated.

Without attempting to express our opinion of a board of health who would attempt to deprive a person under such circumstances from exercising the privilege of having his own family physician in attendance at such a time, it is sufficient to say that nothing appears in this case which would indicate that the services of the respondent were thrust upon the appellant by the county board, or that his services were not desired by the appellant at the time. Entertaining these views, then, we are unable to see any error of the refusal of the court to charge, as a matter of law, that the forcible removal of the appellant from his own premises to the place designated for the detention of cases infected with small-pox would of itself make him a county charge.

It is insisted that the respondent being in the employ of

the county board, and performing the services of physician upon a salary, he would be thereby precluded from making any charge against individuals over whom the board of health had exercised any authority. There would indeed be force to this reasoning if it was established that the appellant properly belonged to the class for whose benefit the respondent contracted to perform the services, viz: the paupers of Burleigh county. But as it is not insisted that the appellant was a pauper, unless his removal to the pest-house made him such, and that proposition having already been disposed of, we might well leave this branch of the case, except for the additional claim which is strenuously urged by appellant's counsel, that the respondent, by virtue of his employment to attend the county paupers, became therefore a *de facto* or *de jure* county officer, and was therefore prohibited from contracting for and receiving additional compensation for services which, from the nature of his employment, he was bound to render to the county or to the county's poor. And our attention has been called to the forcible language used by Senator TRACY, in Hatch v. Mann, 15 Wend. 44.

That was an action brought by a constable to recover extra compensation for services in making an arrest of the defendant's debtor, and all the cases to which our attention has been called are of the same character; and, as was held by the court in that case, no good reason seems to exist why an officer of the law should be allowed to charge for and collect for services a sum of money independent and in excess of the fees allowed by law. To hold that doctrine as applicable to the case at bar would necessitate a holding by this court that a practicing physician hired by a board of county commissioners to perform certain services at a stipulated price was *ex necessitate rei* a public officer,—a doctrine which we are yet unwilling to indorse. And, while entertaining these views, we do not wish to be understood as saying that the rule laid down in Hatch v. Mann should not apply to a physician, to the respondent in this case, so far as the paupers of Burleigh county are concerned. So far as those persons for whose benefit the respondent contracted

his services, the same rule should apply, alike to civilian and officer.

No proceeding imaginable is better calculated to cause our moral sensibility to revolt, or be more in conflict with sound legal principles, than to consider a person in respondent's position grinding out a small additional pittance from those unfortunates for whose benefit he was employed, and paid from the charity fund of the public treasury. And little, if any, better reason exists why one possessing an abundance of this world's goods, and who, ordinarily, would resent with indignation the charge of being a public pauper, should, from the simple fact that he was compelled to temporarily abide with those of similar physical disability, be allowed to reach for the same charity fund to defray the expenses incident to one in the condition of appellant in the case at bar. Indeed, it would seem to be but an additional step in the same direction, to ask, in the event of decease, that the public should bear the expense of the undertaker, sexton, and perhaps, to be in keeping with the value of the estate left, the county should secure the services of some eminent artist to indicate, by an appropriate "monumental pile," the final abode of one whom the public must consider a benefactor only by reason of the fact that the avenues were closed for further gratuitous bounty and expenditure.

We are unable to say that the respondent was a county official, in the sense claimed by appellant's counsel, or that the appellant was a county charge or pauper; and that leaves the only remaining question: Did the court err in refusing to give, as requested, the first instruction asked by appellant's counsel, which is as follows: "The defendant asks the court to instruct the jury that the plaintiff must prove the contract set out in the complaint by a preponderance of testimony."

That the plaintiff below must recover, if he recover at all, upon and by virtue of a contract, express or implied, must be conceded. The pleadings in the case admit that services were rendered by the respondent, and for the appellant; but denies that they were furnished at the request of appellant; and the answer further alleges payment by the board of county commissioners,

—that is to say, the sum allowed respondent by the county board for his care of the county paupers included and covered the amount which respondent is authorized to charge for the services sued for in this action. Upon the issue of payment the burden, of course, was upon the appellant. and the verdict of the jury would seem to settle that issue for the respondent.

The only remaining question, then, would be, was there such a contract between these parties as would make the appellact liable for the bill in controversy? This question was submitted to the jury; but the jury were not told in terms that they must find such contract by a fair preponderance of the evidence to entitle the plaintiff to recover, as was requested by counsel for appellant. The appellant not being a pauper, not belonging to that class for which the respondent contracted to perform services for a stipulated sum—if the appellant accepted these services from day to day for thirty days without protest or objection, we think the jury would be warranted in finding there was an implied agreement to pay for the same; and this question was submitted to the jury by the court, using the following language: "There is no dispute about the services having been rendered in the sickness of this defendant; nor is the amount as I understand, disputed, by any evidence at least; but the question is whether this is chargable to this defendant and payable by him, or whether it is within the employment of the county commissioners, and was paid by them. That, gentlemen, is really the question in the case. The first question, and perhaps the most important one, in the case is whether this defendant employed the plaintiff to attend him, or whether he enpressed a desire that he should continue to attend him during his sickness. That, perhaps, will control more than anything else the question as to whether the defendant is liable for these services. And the question here is whether this defendant did employ Dr. Porter, and under circumstances which make him liable to pay him for these services. It is claimed by the defendant that Dr. Porter was sent there by the county commissioners, and therefore he was employed by them, and claims he did not employ him. Dr. Porter swears that he did. This ev-

idence you must look at. You are to take the whole case, look at all the circumstances. and see whether you can find that these services did come within the employment; and that he should have rendered them for the county, or whether he did render them, under the circumstances, for this defendant by any agreement or arrangement."

It seems, therefore, that the court submitted to the jury as a question of fact whether or not there was any contract expressed or implied, between these parties concerning the pay for these services. That the services were rendered as alleged in the complaint, is admitted by the answer. No objection is made but what the appellant received these services from the respondent from the twentieth day of April to the twentieth day of May without the least question or the slightest objection. Then, as we have already intimated, if the appellant did so receive and accept the services without objection, it may be seriously questioned whether there was, on this branch of the case, anything for the jury. The court below, however, saw fit to submit to the jury two questions of fact: First, whether the compensation for these services was included in the amount paid respondent by the county;·second, whether there was any understanding or agreement between appellant and respondent that the services should be performed, and medicines furnished for him. the appellant;—and upon both questions the jury fourd for the respondent. We are of the opinion, therefore, that the instructions were fully as favorable as the appellant could ask, and that no error prejudicial to his interest was committed by the court, and the judgment should be affirmed.

CHURCH and FRANCIS, JJ., dissent.