# F. M. WESTBROOK
## v.
# W. H. HOWELL.

*Evidence—Written Instruments—Admissions—Instructions.*

1. A party to a written agreement to pay money, absolute in its terms, can not show by parol that he was not to incur personal liability thereby.

2. In an action on a written instrument, defendant, under the plea of want of consideration, may show that before its execution the indebtednes; for which it was given was wiped out.

3. It is error to instruct the jury that the admissions of a party to a civil action are strong evidence against him.

[Opinion filed February 4, 1890.]

APPEAL from the Circuit Court of Saline County; the Hon. ROBT. W. McCARTNEY, Judge, presiding.

Appellant and appellee were engaged for a number of years as partners in a general mercantile business. On the 1st day of January, 1878, this partnership terminated. Appellant sold out his interest in the business to his son, J. W. Westbrook. At this time appellee was indebted to appellant in something over $1,100. Appellant sold his interest in the partnership business to his son for a like sum, and appellee and J. W. Westbrook executed to appellant their joint note for $2,364.57. At this time appellant, appellee, and one M. M. Pool, of Shawneetown, entered into a partnership, to buy and ship tobacco, at Marion; and by the terms of this partnership each of the three partners was to have one-third of the profits, if any were realized, from the tobacco speculation. Pool furnished all the money with which to buy the tobacco, and appellant and appellee were to do the work of buying and handling the same. Appellee claims that he wanted to sell the tobacco when it could have been disposed of at a large profit, but the other members of the firm overruled him, and

refused to sell. He claims that in August, 1878, appellant, who then was temporarily stopping at Evansville, Indiana, came to Marion, and appellee, being dissatisfied because the tobacco was not sold, offered appellant to sell him his interest in the tobacco for $1,500. This proposition, he says, appellant declined, but offered to give him the amount—one-half—which he owed appellant on the note for $2,364.75. Appellee was not willing to do this, he says, but would agree to take up his half of the $2,364.75 note on the trade if appellant would agree to give him the overplus of the profits, if there were any. He says appellant said in answer to this, "I will study about the matter, and when I get back to Evansville will write you what I will do." Soon after he received this letter and statement:

"EVANSVILLE, IND., Aug. 31st, 1878.

" Mr. W. H. HOWELL,

"*Dear Sir:*—I have been thinking over the trade we was talking about, your one-third interest in the tobacco, and have come to that conclusion to take the tobacco and give you credit for your half of the note—the note and interest is $2,522.25, and half of it is $1261.12½, and I will still hold several notes against you and Will. So let me hear from you at once.

" Yours truly,
" F. M. WESTBROOK."

Accompanying this and in the same envelope was the foling:

" EVANSVILLE, IND., August 31st, 1878.

"It is agreed and understood that the said Howell is to have one-third of the net profits of all the tobacco bought, received and prized at Marion, Illinois, in the year 1878.

" F. M. WESTBROOK."

On receipt of these, appellee wrote and sent to appellant the instrument sued on in this case.

"MARION, ILLINOIS, Sept. 1, 1878.

" Due F. M. Westbrook, twelve hundred and sixty-one dollars and eight cents ($1,261.08) to be paid out of the profits of

my interest in the purchase of tobacco of Westbrook, Howell & Company in the year 1878, to bear interest at ten per cent interest till paid.

"W. H. HOWELL."

Appellee claims that he made and signed this due bill to appellant for $1,261.08 and sent it to appellant only for the purpose of separating it from the large note, and that it was to be held only by appellant to show how much his indebtedness to appellant was at that time, and was in any event not to be enforced against appellee, but simply held to fix the amount of appellee's indebtedness, which was understood to be canceled by the sale of appellee's interest in the tobacco; but in case the share of appellee in the profits on the tobacco amounted to more than the note, the note would show the indebtedness and furnish the basis for determining the surplus of tobacco profits, if any. Appellant denies that he ever bought the interest of the appellee in the tobacco; that the only purpose of writing the letter of August 31st was to prevent creditors of Howell from attaching the tobacco. He says the letter was written for this purpose at Howell's request. This suit is brought upon the due bill for $1,261.08, and besides the general issue, the defendant pleaded accord and satisfaction, want of consideration and payment. The result of the trial was a verdict for the defendant.

Mr. W. H. BOYER, for appellant.

Messrs. F. W. YOUNGBLOOD and MARSH & SCOTT, for appellee.

REEVES, P. J. Whether the instrument sued on is a promissory note does not seem to us an important question. It must be conceded that it is a written contract to pay a certain sum of money, payment in the first instance to be made out of the profits of the joint tobacco purchase. It must also be conceded that, interpreting the instrument by its terms, if there should be no profits of this tobacco purchase, then it was payable in money, and if there were profits, but not enough to

pay the amount in full, then the balance of the sum mentioned in the instrument should be paid in money.   Bilderback v. Burlingame, 27 Ill. 338.

There is no question under this evidence that appellee made and delivered this written instrument to appellant, and having done so it must stand, and be enforced according to its terms, unless by some subsequent agreement between the parties to it, it was altered or discharged.   Of course the maker of a written contract which has been delivered may resist its enforcement, on the ground that it was obtained by fraud; that it was made without consideration, or that the consideration has failed.

If the agreement be an absolute undertaking, then he will not be permitted to show by parol testimony that in no event was he to incur any personal liability by the writing, because to do so would be to contradict and vary, by parol, the terms of his positive agreement.   As was said in Hypes v. Griffin, Adm'r, 89 Ill. 137, " Whatever may be the decisions elsewhere, the authorities in this State are full to the point that a party will not be permitted to show by oral testimony that his written agreement was not in fact to be binding on him."

We think the defendant is entitled, under his plea of want of consideration, to show, if he can, that the indebtedness for which the instrument sued on was given, had before its execution been wiped out and paid, but he should not have been permitted to show by parol that the instrument sued on was not what it purports to be, or that it was not to be binding on him.

It will be seen also, under the view of the law above set forth, that plaintiff's refused instructions, numbered one and three, should have been given, and the second instruction given for defendant should not have been given.   The third instruction given for defendant starts out with the assertion that the admissions of a party to a civil suit are strong evidence against him.   This is contrary to the recognized rule as to the force to be given to admissions as evidence, but is clearly objectionable for the further reason, that it is not the province of the court to indicate to the jury the force of any

evidence admitted to them, except possibly when, if true, it works an estoppel.    The instruction as a whole should not have been given.

The errors indicated are sufficient to reverse the judgment. While we do not purpose to discuss the evidence generally, we will call attention to the fact that appellee claims that he had declined the very proposition contained in the letter of August 31st, when made to him by appellant about the 20th day of August, 1878.    He says that in the talk of that date he declined this offer, but "I said I was willing to take up the note on the trade, if he would agree to give me the overplus in case there was any; he studied about it awhile and said: "I will study about it, and when I get to Evansville I will write you."

Now, the letter of August 31st clearly did not accept this offer, but says:    "I have been thinking over the trade we were talking about, your one-third in the tobacco, and have come to the conclusion to take the tobacco and give you credit for your half of the note;  the note and  interest is $2,523.25, and half of it is $1,261.12½."    Now, does the proof show this offer accepted by the appellee ?    There is nothing in the testimony following the receipt of this letter except the instrument sued on.    By its terms appellee clearly proposed to retain his interest in the profits of the tobacco, and out of his profits to pay his half of the large note.    We do not see how it can be possibly interpreted, looking to all the instrument as an acceptance of the offer made in the letter of August 31st.    If appellant's offer in this letter was not accepted by appellee, then it does not appear that there was any sale of appellee's interest in the tobacco.    Had appellee added to the due-bill, "But in case the profits in the tobacco do not amount to $1,261.08 and interest, said Westbrook is to take said profits in full satisfaction of this due-bill," and Westbrook had accepted the instrument so written, this controversy would not have arisen.    If the intention of appellee in giving this due-bill was what he now claims it was, it is, to say the least, strange that some such provision as above indicated was not inserted in the due-bill.

If it be claimed that the statement accompanying the letter is to be considered with the letter, in fixing the true character of the proposition of Westbrook, still there is a failure to sustain appellee's theory that this letter and statement were an acceptance of appellee's offer to give his interest in the tobacco profits in satisfaction of his debt to Westbrook, provided, if the profits exceeded the debt, this excess was to be paid over to appellee. The proposition in the letter is to buy Howell's interest in the tobacco at the fixed price of $1,261.12. If Howell's claim is true, the statement should, and in the natural course of business would have been, that notwithstanding the purchase and sale, Howell should have any excess of his interest in the profit on the tobacco, when ascertained, over the amount of the debt. As it reads, if the two are to be construed together, the only intelligent interpretation to be placed upon the letter and statement is, that notwithstanding the sale by Howell to Westbrook, of his interest in the tobacco, this sale was, in fact, only colorable, and Howell should still be entitled to receive his full share in the profits realized upon a sale of the tobacco. This interpretation accords with Westbrook's explanation of the reason why this letter and statement were written and sent to Howell. The letter would show, if controversy arose with Howell's creditors, that he had transferred his interest in the tobacco to Westbrook, while the statement, as between appellant and appellee, would still entitle Howell to his full share in the profits when the tobacco was sold.

The judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*