## J. D. JOHNSON v. M. J. STONE.

1. REPLEVIN.　*Wilful taking.　Evidence.　Connected acts.*

Where one purchases at the same time, and as one transaction, a farm and the stock thereon, receiving separate conveyances, and the seller refuses, at the time agreed upon, to deliver possession of the property, claiming a rescission of the whole trade, and the purchaser brings replevin for the stock, and asks punitive damages for their detention, he may, as tending to show wilfulness, introduce evidence that the seller, on another occasion, unlawfully took and forcibly detained from him his deed to the land.

2. SAME.　*Wilfulness; how shown.　Separate suit.　Pleadings therein not competent.*

But, on the trial of such replevin suit, it is error to allow the plaintiff to read in evidence a declaration in replevin previously filed by him to recover possession of the deed to the land, since the declaration contains mere *ex parte* statements in pleading.

3. INSTRUCTIONS.　*Value of admissions.　Weight of evidence.*

The jury, not the court, must determine the relative value of admissions. Accordingly, an instruction which declares that admissions, if fully and deliberately made to a disinterested person, are of weight, but that casual declarations, made in idle conversation, do not deserve much consideration, is erroneous as being on the weight of evidence.

4. SAME.　*Recital of evidence.　Must embrace real contentions.*

An instruction in such case is erroneous which tells the jury to find for plaintiff if it believes certain facts, though not controverted, and ignores the real contention, which, in this case, is the rescission of the trade.

FROM the circuit court of DeSoto county.

HON. JAMES T. FANT, Judge.

In September, 1890, the appellant, Johnson, purchased from the appellee, Stone, the latter's plantation, and the farming implements and stock thereon.  At the time of the bargain a memorandum thereof was made by Johnson.  A few days afterwards Johnson and Stone met, by appointment, to consummate their trade.  A conveyance of the land to Stone was prepared and executed by Johnson, and a trust-deed to secure the installments of the purchase-money was prepared, to be signed by Stone.  A separate price was placed upon the stock and farm implements, and a separate deed of trust thereon was given by Stone to secure the payment of such price.  It was stipulated that possession of both the real and personal property should be delivered by Johnson to Stone on the first of January, 1891.  The papers then prepared were duly executed and delivered, Stone taking the deed to the land and Johnson taking the deeds of trust and the notes.

On January 1st following, Stone demanded possession of the farm and personal property, but Johnson refused to deliver possession.  Stone thereupon brought ejectment for the possession of the land, and also instituted this action of replevin for the recovery of the personal property.  The sheriff having the writ of replevin, was unable to find the personal property, and, having so made return on the writ, the declaration was amended, and the action proceeded under § 2619, code of 1880, for the conversion of the property, and damages for the detention.

The defense relied on by Johnson was that, after the trade had been made and the papers passed, it was canceled; that he and Stone having met on one occasion, the latter told him that he would prefer to cancel the trade, and that by mutual consent it was rescinded, and the notes and trust-deeds were surrendered.  The defendant introduced several witnesses to corroborate his own statement in this regard, but the plaintiff, Stone, as a witness, positively denied that there had been any cancellation of the trade, or any agreement looking to a rescission.

On the trial the plaintiff was allowed, over the objection of the defendant, to show that the deed to the land, which had been delivered to him, had been unlawfully taken from him by Johnson and forcibly detained. The circumstances attending this seizure and retention of the deed are stated in the opinion of the court.

The court also permitted plaintiff to introduce evidence of a replevin suit instituted by him against Johnson and another, alleged to be a confederate in the unlawful taking, to recover the deed; and the declaration which alleged the circumstances of such taking of the deed, was read by the plaintiff in evidence.

The court granted, among other instructions for the plaintiff, the following:

"1. The court instructs the jury, for the plaintiff, that admissions may be the strongest or the weakest evidence. If there be a full, deliberate statement made by a party to one interested to hear, as to a subject-matter then or afterward in suit, such admissions are entitled to weight, for the mind of the party was distinctly directed to the subject; but a single, separate declaration, casually made in loose or idle conversation, would not, of itself, deserve much consideration. But the admissions of either party, if in evidence, must go to the jury, along with all the evidence in the case, to be considered by them, and the jury should give to them such weight, in connection with all the evidence in the case, as they may think them reasonably entitled to.

"2. The jury are instructed that if Johnson sold his land to plaintiff, and made him a deed to it, and took a deed in trust back to secure the deferred payment, then it was not necessary for the wife to join in the deed in trust to secure said deferred payment, but the same was secured by the deed without her signature or consent.

"3. It is entirely lawful for a sale of land to be made upon condition that, upon default of the first payment, the purchaser shall forfeit his trade, and become a tenant of his

vendor and pay a fixed rent. In such case the jury are in-structed that the rent is a lien upon all the agricultural products grown upon the premises, by whomsoever raised.

" 6. The court instructs the jury that, if they believe from the evidence that the defendant, J. D. Johnson, sold to the plaintiff, M. J. Stone, in September, 1890, the property sued for in this action, on a credit, taking the buyer's note for the purchase-money, payable in December, 1891, and a trust-deed on said property to secure payment of such purchase-money, and that possession of said property, under said sale and purchase, was to be given to Stone, January 1, 1891, and that said property was in defendant, J. D. Johnson's, posses-sion or control, and retained by him when this suit was com-menced in January, 1891, then they will find for plaintiff, and will assess the value of said property from the evidence in this cause, and also the value of the use of such property from the first day of January, 1891, till date of their verdict."

The court also instructed for plaintiff that if Johnson de-tained the property unlawfully, and in wilful disregard of the rights of Stone, and with intent to injure and oppress him, the jury might find the value of the property, together with the expenses incurred for attorney's fees, and such further sum as the jury might inflict as punishment for the wilful wrong.

The verdict and judgment were in favor of the plaintiff, and the defendant appeals.

*Ira D. Oglesby*, for appellant.

The single issue of fact was the cancellation of the trade. The circumstances of this were shown by several disinter-ested witnesses, who corroborated the defendant. Against this was the testimony of the plaintiff alone, who denied the rescission. I submit that the judgment should be reversed on the evidence.

The court below permitted plaintiff to inject into this suit his replevin suit against Johnson and another to recover the

deed, and to testify in reference to the taking and detention of the deed, and even permitted him to read in evidence the declaration filed by him in that suit. This declaration charged defendant with conspiring with others to rob him of his deed. I am unable to conceive how the *ex parte* statement of the plaintiff, in his pleadings in another case, could be legal evidence in this. The manifest tendency of this testimony was to obscure the issue and distract the attention of the jury from the case, and to prejudice defendant's case. The introduction of this irrelevant testimony should cause a reversal. Its introduction will be deemed immaterial only in cases where the court cannot perceive that it would have any bearing upon the result. 24 Wend., 419.

The second and third instructions are correct as abstract propositions that have no connection with the case at bar. There was no issue before the jury on these propositions. Their only effect was to keep the mind of the jury fixed upon the other suit, which the court, in effect, permitted to be tried along with this. The instructions being erroneous, the court will presume that they had a prejudicial effect. *Harper* v. *Tarpley*, 35 Miss., 506; *Norfleet* v. *Sigman*, 41 Miss., 634.

The instruction relative to the value of admissions was clearly erroneous. It is not for the court to charge upon the weight of evidence. *Kearney* v. *State*, 68 Miss., 233; *French* v. *Sale*, 63 Miss., 381; *May* v. *Taylor*, 62 *Ib.*, 500; *Dawson* v. *State, Ib.*, 241; *Lockhart* v. *Camfield*, 48 *Ib.*, 470; Sackett on Instructions, 15.

The sixth instruction completely ignores the controverted fact of the cancellation of the trade. It does not touch the real issue.

*H. R. C. Foster*, on the same side.

*Morgan & Buchannan*, for appellee.

Argued orally by *Ira D. Oglesby*, for appellant, and *J. B. Morgan*, for appellee.

COOPER, J., delivered the opinion of the court.

The facts of this case are peculiar, and, under its circumstances, we do not think the conduct of the defendant in reference to his caption of the deed to the land was irrelevant evidence on the trial of the issue herein involved. The plaintiff's contention is that the defendant, having sold to him his farm and stock upon credit, became dissatisfied with the sale, and set himself to annul it; that, in furtherance of this purpose, he seized the deed for the land (which had been delivered to the plaintiff) when the plaintiff had handed it to Foster, the defendant's attorney, to aid him in the preparation of a contract to secure the rent for the first year if the first installment of the purchase-money should not be made, and, in further prosecution of the same scheme, set up a false claim that plaintiff, a few days thereafter, had, by agreement with him, rescinded the whole contract. True, this is controverted by the defendant, but the agreement for rescission upon which he relies and which he seeks to establish, has relation not only to the contract for the sale of the personal property but also to that of the land. It is to be borne in mind that the sale of both personalty and realty was, in fact, one transaction, though evidenced by different instruments, and that the alleged rescission was as to both. The personalty and realty are inseparably blended at the beginning and alleged end of the negotiations, and it is immaterial that a part of the subject-matter is land and a part realty. If the sale had been of personalty only, a part of which had been delivered at the time of the sale and a part agreed to be thereafter delivered, and if the defendant, contending that he had a right to coerce the plaintiff into compliance with certain agreements claimed by him to have been made in reference to the sale, had seized, by force, the personalty delivered to the plaintiff, and declared that it should only be returned to him upon his submitting to defendant's claim, and had afterwards refused to deliver up the other personalty at the time fixed by the original agreement, and, being sued for such property,

had set up a rescission of the whole sale by agreement with the plaintiff, it would not be doubted that it would be competent for the plaintiff to show, and for the jury to find, that the defendant was engaged in one single scheme, and was actuated by one illegal purpose common to all the property. If, under such circumstances, what he did or said at one time or another would be competent evidence, though one act or declaration might relate to only a part of the whole property, it is impossible to deny the competency of the testimony here, for there is no difference in principle in the case presented from the one supposed. Certainly, an act competent as evidence, because the property to which it relates is a part of a mass, loses nothing of its relevancy for the mere reason that a part of the property is land and another personalty.

The court, however, erred in admitting the declaration filed by the plaintiff in the suit brought by him against Foster and the defendant to recover the deed, to be read in evidence in this case. The allegations of the declaration were the mere statements of the pleader, and, even if they were the statements of the plaintiff, they would be only hearsay. A party cannot, by putting an *ex parte* statement in the shape of pleading, give it competency as testimony.

The second instruction for the plaintiff is upon the weight of evidence, and should not have been given. The law knows nothing about the relative value of admissions; that is a matter for the consideration of the jury. Counsel may argue the probable value of such admissions to the jury, and show the circumstances under which they were made as affecting their weight; but the fact that this may be done, or that a text-writer or court states in argument "that an admission casually made is of little weight," does not make it a proper subject to be given in charge to the jury.

We fail to perceive any necessity or propriety in giving the instructions marked two and three in the record. The sixth instruction was clearly erroneous. There was no contention about the existence of all the facts therein recited. It ignores

the real contention of the defendant, that there had been a rescission of the contract of sale, and peremptorily tells the jury to find for the plaintiff if it believes certain uncontroverted facts, which certainly did exist, but which, existing, did not touch the real contention developed by the evidence.

*The judgment is reversed.*