[No. 10653.  Department One.  January 21, 1913.]

PAUL KLODEK, *Respondent*, v. MAY CREEK LOGGING
COMPANY, *Appellant*.[1]

APPEAL—REVIEW—HARMLESS ERROR.  Error in the exclusion of evidence is not prejudicial, where from the whole record it appears that the fact was established by other evidence.

MASTER AND SERVANT—INJURY TO SERVANT—MEDICAL ATTENDANCE —COMPETENCY OF PHYSICIAN—EVIDENCE—ADMISSIBILITY.  Upon an issue as to whether an employer had provided a competent surgeon to treat a servant's injured knee, it is competent and relevant to show that the surgeon was holding himself out as an eye and nose specialist.

SAME—FURNISHING MEDICAL ATTENDANCE—DEFENSES —SPECIAL CONTRACT.  The fact that an employer in deducting hospital dues was acting under a contract with a hospital association and turned over all dues to it, does not relieve the master from liability for failing to provide proper medical attendance, under a special contract with the servant to do so.

SAME.  While a finding, contrary to the evidence, that an employer retained part of the hospital dues, which it collected for a hospital association, is technically inconsistent with a general verdict for the plaintiff based on the fact that the hospital was the employer's agent, it is not hostile thereto, where the employer had made a special contract to provide medical attendance to injured workmen.

APPEAL—REVIEW—VERDICT.  The question of agency is usually one of fact for the jury, whose verdict on conflicting evidence will not be disturbed.

Appeal from a judgment of the superior court for King county, Myers, J., entered July 13, 1912, upon the verdict of a jury rendered in favor of the plaintiff, for personal injuries sustained by an employee in a logging camp.  Affirmed.

*Gates & Emery*, for appellant.

*Miller & Lysons*, for respondent.

[1] Reported in 129 Pac. 99.

CHADWICK, J.—Paul Klodek sought employment at the office of an employment agency in the city of Seattle. He was furnished with transportation to the defendant's logging camp, and given a memorandum of his employment for presentation to the company. The memorandum is as follows:

"Seattle, Wash., Feb. 21, 1910.

"Received from Paul Klodek the sum of ($1) one dollar, for which we agree to furnish correct information by which he shall secure a position as bucker with May Creek Logging Co., Kennydale, on order received at 1 o'clock M. on the...........day of Feb. 21, 1910, wages $3 per day. Board, $5 per wk. Failing to do which, we promise to refund the said sum of $1 on return of this receipt without delay, together with a written statement on the back thereof from the employer that the applicant did not procure the situation. But the undersigned does not hold himself responsible for any expense incurred by the said Paul Klodek should he fail to procure the situation above stated, unless the information given at this office, upon which he acted and applied for situation should be found to have been incorrect and misleading.

"I agree to above conditions:

"(Signed)   Paul Klodek.

"Crawford & Pratt, Employment Agents,
"By (signed) Pratt."

Appellant at once proceeded to the camp. Mr. Fish, the general manager and superintendent, was absent, and the memorandum was presented to a Mr. Graves, who was bookkeeper and in charge of the company's store. Plaintiff testified concerning his employment as follows:

"A. I got a ticket from the employment office and I go to the camp and to the office, I give the ticket to the man and I says are you the man that hires a bucker from the agent's office and he says yes. Q. What else then did you say? A. Well I asked him, I says now have you got the tools here and he says to me, I can get it in the office after breakfast. Q. Well, what else did you talk with the man there? A. Then he asked me, can you file your own saw? Q. What else took place? A. Well, he says that is what we want. I says how is business down there? and I says to him,

how is business down in that camp? And he says $5
board, $3 wages and $1 hospital fees.   I wanted to
find out how is that one dollar to a hospital; what for? Well
he says if I be sick or if I be hurt, he says I give you good
doctors and hospital, and attend to you until you get well.
I says that is good sir, and the next day I started to work."

At the time plaintiff was employed, the defendant company
was under contract with the American Hospital Association,
a corporation engaged in supplying medical and surgical
assistance and hospital service to employees of logging com-
panies who might be hurt or require such service in the
course of their employment.  It seems that plaintiff was not
directly informed of this by Mr. Graves; but, at the time of
his employment and subsequent thereto, a notice of such fact
was posted on the door of the bunk house.  While engaged
in the work assigned to him, plaintiff fell from a log or tree,
striking his knee against the blade of a double-bitted axe,
and received very severe injuries.  The patella was cut in
two pieces and the left tibia was splintered off for about five
inches.  Plaintiff was taken to the Providence Hospital in
the city of Seattle where, after an operation by, and one sub-
sequent consultation with, a surgeon, he was attended by the
physician of the hospital association.  There is no claim of
negligence in the matter of the injury, but it is contended
that, in violation of its contract, defendant suffered plaintiff
to go without proper or sufficient treatment; that the physi-
cian of the hospital association was unskilled and incompe-
tent, so that plaintiff was made a cripple for life.  The de-
fense is that defendant owed no obligation except to provide
a hospital service of good repute, and having done so it
has discharged its full duty.  The charge of negligent and
unskillful treatment is also denied by defendant.  Such other
facts as may become incidentally important will be discussed
in the body of the opinion.

It is assigned as error that the court sustained an objec-
tion to a question put to a nurse who had some years' ex-

perience, the question being, "Now was this treatment that was given to the plaintiff the usual and customary treatment?" Granting that she was qualified, the nurse might have answered the question. 2 Jones, Evidence, 370. But it is not always that a case will be reversed because of the improper exclusion of evidence, where from the whole record the fact sought to be proven is testified to by other witnesses, as it was in this case. The court will treat the question as if it were an offer to cumulate evidence upon a motion for a new trial, and hold that no prejudice has resulted therefrom.

The next error assigned is that the appellant was prejudiced by the introduction of a newspaper advertisement containing the name of the attending physician and describing his specialty and place of business: "Eye & Nose, 206-7 Marion Bldg." We are unwilling to hold that this was error. We will take notice of modern tendencies and conditions in the medical profession, and if a physician holds himself out as a specialist along certain lines, it is no discredit to him to show that fact and from it raise the inference that he is not keeping up with practice in other lines. At any rate, he or those relying upon him should not complain of the burden of meeting the *prima facie* showing. The basis of the charge in this case is that the physician was incompetent and unskilled. It was for the jury to say whether he was or not, and the fact that he was specializing in other branches of the profession was a circumstance relevant to the issues.

The court submitted special interrogatories to the jury, which found in answer thereto that, in receiving one dollar per month from plaintiff, defendant was acting for itself and not as agent for the American Hospital Association; that it retained a portion of the dues; that it undertook to treat plaintiff until he was cured; that it employed the attending physician; and that it did not procure or provide a suitable, competent, or skilled physician or surgeon to treat

the respondent. All of these findings are said to be contrary to the evidence; and they are, if appellant's theory is accepted as final, for its contract with the hospital association was proved, and its testimony showing that it paid over all the money collected is not rebutted. But this theory ignores respondent's contention that there was a special contract; and the jury found, as one of its special verdicts, that appellant did make a special contract with respondent as alleged and maintained by him. If there was such a contract, it may well be that the appellant acted for itself, and that the hospital association was its agent in the performance of its contract. The finding that it did retain a portion of the dues would, under this conclusion, be technically inconsistent with, but not hostile to, the general verdict. The authority of Mr. Graves to make a contract, or, if made, that it was not within the scope of his employment with respondent, is denied. There was evidence to go to the jury upon this disputed question. The question of agency is usually one of fact, and the finding of the jury will not be disturbed where the evidence is conflicting.

Many objections are urged to the instructions given and refused. If we accept the theory of the appellant that it owed no primary duty to respondent except to use ordinary care in selecting a hospital association, most of the objections would be well taken. But we find the instructions complained of to be consistent with the theory of the respondent that there was a special contract, and those given are therefore not objectionable. The instructions refused were sufficiently covered by other instructions. There was no error.

Judgment affirmed.

CROW, C. J., GOSE, and PARKER, JJ., concur.