[No. 12200.    Department One.    December 15, 1914.]

## C. L. VANDERBOGET, *Respondent*, v. CAMPBELL MILL COMPANY, *Appellant*.[1]

MASTER AND SERVANT—INJURED SERVANTS—LIABILITY FOR MEDICAL AND HOSPITAL SERVICES—CONTRACT—PERFORMANCE OR BREACH. A mill company, which had agreed to furnish hospital and medical attention to injured employees, deducting one dollar a month from their pay for such purpose, is not liable for the services of doctors and a nurse who were employed by the family of the injured employee after his arrival at the hospital, because they were not satisfied with the company's physician, who tendered his services free, since the company had fully performed its contract, so far as permitted.

MASTER AND SERVANT—SCOPE OF EMPLOYMENT—AUTHORITY OF SERVANT. A lumber salesman, directed by a mill company to take an injured employee to a hospital where the company had already arranged for medical and hospital services, has no authority to employ some other physician, especially where the higher officers of the company could have been easily reached by telephone.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered March 9, 1914, upon findings

[1]Reported in 144 Pac. 905.

in favor of the plaintiff, in an action for services rendered. Reversed.

*W. H. Beatty* and *R. E. Thompson, Jr.*, for appellant.

*McClure & McClure*, for respondent.

Gose, J.—The plaintiff, a physician and surgeon, brought this action to recover the reasonable value of services rendered by himself, and by another surgeon and a nurse whose claims had been assigned to him. The services were rendered in attending one Ray Harney, an injured employee of the defendant, who died three days after he met his injury. The plaintiff recovered in the court below. The defendant has appealed.

The facts are few and simple. After Harney was injured, the appellant's superintendent directed one Murphy to take him to Providence hospital, in the city of Seattle. He did so. Mr. Reynolds, an uncle of the injured man, met Murphy at the ferry in Seattle and accompanied the two to the hospital. The appellant's superintendent, at the instance of the injured man, had telephoned the uncle to meet his nephew. When they arrived at the hospital, Dr. Osborne, who was employed by the National Hospital Association to treat the appellant's employees, was there. He proceeded to examine the wounded man, but was shortly informed by Reynolds that his services would not be required; that the respondent would have charge of the case. He told Reynolds that he was paid by the hospital association to treat the case, and that he was ready to do so. Reynolds, who was not satisfied with Dr. Osborne, employed the respondent, who in turn, with Reynolds' consent, employed Dr. Sharples and the nurse. Reynolds testified that he told Murphy that he was not satisfied with Dr. Osborne, and that he wanted the respondent, who was his family physician, to attend his nephew; that Murphy said: "That is all right; go ahead," and that he then called the respondent. He said that he did not know Dr. Osborne; that he had not met him prior to that time. He further said that,

after the young man died, he told Murphy over the telephone that there were physicians' and nurses' charges, and that Murphy answered: "We will see that all settled." Murphy testified that he told Reynolds that appellant would not pay for the service of a physician. He further said that he was employed by the appellant as a lumber salesman only, that his only directions were to take the injured man to the hospital, and that he was not directed to arrange for medical attention. The appellant's superintendent testified that he directed Murphy to take the boy to the hospital, and that he did not direct him to employ a physician. There is no testimony to the contrary. The superintendent further said that the appellant, "had an arrangement with the hospital association under which one dollar per month was deducted from the wages of each man who worked at the mill, on the understanding that the deduction entitled him to medical attendance by the hospital association;" that he made arrangements with the hospital association for the treatment of Harney, and directed it to have its doctor there. The appellant's place of business was on Lake Sammamish, and had telephonic communication with Seattle. The physicians and the nurse each testified that they had no conversation with any representative of the appellant.

Assuming that Reynolds correctly related his conversation with Murphy, the appellant is not liable. It had arranged in advance for medical and hospital care for Harney, in obedience to its contract with him. It exacted and withheld one dollar per month from the wages of each employee and paid it to the hospital association. This entitled the employee to medical attendance at the hospital. The arrangement had the implied assent of Harney. Murphy was a subordinate employee and, under the circumstances, had no authority to obligate the appellant to pay for medical and surgical assistance.

It has been held in some jurisdictions that, while a corporation is not responsible generally for medical or surgical aid to a sick or injured employee, it is obligated to render an

employee such assistance in extreme cases where immediate attention is required to save life or prevent great injury. It is said that the duty begins and ends with the emergency. It has been held that, in a railroad accident where an employee is seriously injured on the road at a place remote from the center of authority, the highest representative of the company present, from the necessities of the case, has authority to employ medical and surgical aid. The rule has usually, if not always, been applied to railroad corporations, and the liability has been limited to cases in which there was an extreme emergency calling for immediate medical or surgical attention. *Terre Haute & I. R. Co. v. McMurray,* 98 Ind. 358; 31 Cyc. 1400; *Sourwine v. McRoy Clay Works,* 42 Ind. App. 358; *King v. Forbes Lithograph Mfg. Co.,* 183 Mass. 301, 67 N. E. 330; *Cushman v. Cloverland Coal & Mining Co.,* 170 Ind. 402, 84 N. E. 759, 127 Am. St. 391, 16 L. R. A. (N. S.) 1078; *Sevier v. Birmingham, S. & T. R. Co.,* 92 Ala. 258, 9 South. 405.

Though we should adopt the rule of these cases—and it has been rejected by many courts of the highest learning and respectability—no emergency was shown in this case which would enlarge the powers of a subordinate representative such as Murphy, for two reasons, (a) the appellant had already made reasonable provision for medical and surgical attention and hospital care, and (b) the appellant's place of business was near Seattle, had telephonic communication with it, and its representative officers could have been readily communicated with.

The appellant relies upon *Terre Haute & I. R. Co. v. McMurray,* and kindred cases. This case holds that a conductor on a railroad train had authority, in the name of the company, to employ a surgeon to attend an employee suddenly and seriously injured. There the accident happened on the road at a place remote from the center of authority, and the conductor was the highest representative of the company present. The court was careful to point out that it

limited its decision to surgical services rendered upon an urgent exigency where immediate attention was demanded to save life or limb, and said that "the liability arose with the emergency and with it expired."

Respondent has argued that the appellant is liable in this case because it exacted and withheld a portion of the young man's wages. The answer is that this imposed a duty upon the appellant to provide reasonable care and attention. This it had arranged for in advance.

The respondent has cited *Klodek v. May Creek Logging Co.*, 71 Wash. 573, 129 Pac. 99. The case is not analogous. That was an action by an employee against the employer for damages flowing from negligent surgical treatment. The plaintiff there testified and the jury found, that the defendant contracted to furnish good doctors who would treat him until he got well, and the jury found that in this respect defendant had breached its contract.

The judgment is reversed, with directions to dismiss the action.

Crow, C. J., Parker, Morris, and Chadwick, JJ., concur.