### ST. LOUIS CAR CO. v. GLOVER EQUIPMENT CO.

(Circuit Court of Appeals, Eighth Circuit. April 7, 1924.)

No. 6361.

1. Appeal and error ⬥1058(3)—Exclusion of evidence of fact otherwise shown not prejudicial error.

No prejudicial error results from exclusion of particular evidence, when the facts sought to be elicited are subsequently covered in full by the testimony of another credible witness, and it is clear that no harm has resulted to the party offering the evidence, and this is true where the evidence excluded is documentary and that admitted is oral.

2. Evidence ⬥200—Admissions must be certain in statement.

An admission, to be admissible, must possess the same degree of certainty as would be required in the evidence which it represents.

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Trial ⚖︎194(4)—Weight and effect of admissions for determination by the jury.**

A party is not entitled to an instruction as to the weight or effect to be given to an admission, which are questions for the jury; to be determined in the light of all the evidence.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Action at law by the Glover Equipment Company against the St. Louis Car Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Sears Lehmann, of St. Louis, Mo. (Lehmann & Lehmann, of St. Louis, Mo., on the brief), for plaintiff in error.

Alfred C. Wilson, of St. Louis, Mo. (Wilson & Trueblood, of St. Louis, Mo., and Lewis A. Coleman, of Indianapolis, Ind., on the brief), for defendant in error.

Before LEWIS, Circuit Judge, and SYMES and PHILLIPS, District Judges.

PHILLIPS, District Judge. The Glover Equipment Company, defendant in error, hereinafter called Equipment Company, brought an action against the St. Louis Car Company, plaintiff in error, hereinafter called the Car Company, to recover damages for breach of a contract under which the Equipment Company agreed to manufacture and deliver to the Car Company 2,000 automobile tops on what is commonly known as the cost plus plan. The material portion of the contract is as follows:

"Price each complete, base...................................................$26.65

"Above price is based on the following items, but subject to revisions upward and downward each month with the rise and fall in material and labor, and subsequent change in 50 per cent. overhead, with a certain set profit of $1.50 per job.

| | |
|---|---|
| Material | 20.65 |
| Labor | 3.00 |
| Overhead, 50 per cent. | 1.50 |
| Profit | 1.50 |
| Total | 26.65 |

"(Customer will confirm)"

This contract was confirmed for 2,000 tops. The Car Company was manufacturing automobiles for the Skelton Motor Company. Under the contract delivery of tops was to be commenced in January, 1920, and completed in June, 1920. On account of the refusal or inability of Skelton Motor Company to take the automobiles as fast as contemplated the delivery of tops was held back at the request of the Car Company so that only 800 of the 2,000 tops were delivered within the contract period. Thereafter, from time to time, the delivery of the remainder was postponed by mutual agreement until March 21, 1921, when the Car Company requested cancellation of the balance of the order. The Equipment Company refused to cancel. In June, 1921, the Equipment Company refused to further postpone delivery of the

tops and demanded performance of the contract and the Car Company refused to accept further tops. The Equipment Company thereupon made an estimated inventory of all the top materials, purchased to fill the contract, left on its hands. Later it took a detailed inventory. Copies of both inventories were furnished to the Car Company and payment of the alleged damages demanded.

Under date of September 25, 1920, the Equipment Company wrote the Car Company two letters stating it had disposed of practically all of the top and curtain material on hand with which to fulfill the contract in order to realize needed cash. F. G. Buskirk, vice president of the Equipment Company, testified that he had made a contract for the sale of the top and curtain materials, but the purchaser refused to carry out the contract and the sale was never consummated. The inventories furnished and subsequent claims made by the Equipment Company against the Car Company contained the items of top and curtain material. Edwin B. Meisner, vice president of the Car Company, admitted the inventories and subsequent letters received from the Equipment Company made a claim for these materials and that he never questioned the matter in any of the negotiations for settlement.

The Car Company also introduced two letters written to the Skelton Motor Company by the Equipment Company dated July 26 and 30, 1920. The first letter contained the following statement:

"From the very start we have been carrying material for 300 to 400 cars ahead of their (referring to the Car Company) production on hand, because their shipping schedule was never made to catch the instructions you and Reed gave me."

The second letter contained the following statement:

"We have had on hand material for from 300 to 500 jobs ahead of their shipping instructions at all times."

Both of these letters were signed by Buskirk.

In the original demand for damages and in the complaint, the Equipment Company set out an item of damages for 501 bow sockets which had been purchased from the Ashtabula Bow Socket Company, but not delivered. On January 22, 1923, a representative of the Car Company took this item up with the Ashtabula Bow Socket Company and secured a letter addressed to the Car Company, carbon copy of which was sent to the Equipment Company, disclaiming any damages for the bow sockets not shipped. At the trial the Equipment Company made no claim on this item and William A. Fitzgerald, a witness for the Car Company, testified it had been eliminated from the claim before the trial. At the trial the Car Company offered the letter from the Ashtabula Bow Socket Company as evidence of bad faith. Upon objection the court refused to admit the letter.

At the close of the evidence the court directed the jury peremptorily to find damages in the sum of $1,800 on account of the certain profit of $1.50 per top, and submitted the other items of damages to the jury under instructions. The jury found for the Equipment Company in the sum of $7,707.58. Judgment was entered accordingly and the Car Company sued out a writ of error to this court.

[1] The first error assigned is predicated on the refusal of the court to admit the letter written by the Ashtabula Company. This letter was on a purely collateral issue. The item to which it related was not claimed by the Equipment Company at the trial and had been eliminated from the last itemized statement of its claim furnished to the Car Company. It was within the province of the trial court in its discretion to hold that this evidence under the circumstances was not legally relevant. Furthermore, substantially all that this letter showed was later testified to by William A. Fitzgerald, a witness called by the Car Company and no prejudicial error results from the exclusion of particular evidence when the facts sought to be elicited are subsequently covered in full by the testimony of another credible witness and it is clear no harm has resulted to the party offering the evidence. McLendon v. Grice, 119 Ala. 513, 24 South. 846; Ostland v. Porter, 4 Dak. 98, 25 N. W. 731; Laib v. Brandenburg, 34 Minn. 367, 25 N. W. 803; Klodek v. May Creek Logging Co., 71 Wash. 573, 129 Pac. 99, 100; Bianchi v. Maggini, 17 Nev. 322, 30 Pac. 1004; Richardson v. Nelson, 221 Ill. 254, 77 N. E. 583, 585; Lewis, Cooper & Hancock v. Utah Const. Co., 10 Idaho, 214, 77 Pac. 336, 338. This is true where the evidence excluded is documentary and the evidence admitted is oral. Christy v. Spring Valley Waterworks, 97 Cal. 21, 31 Pac. 1110.

The trial court instructed the jury that the two letters written by the Equipment Company to the Skelton Motor Company were not binding on the Equipment Company and could only be considered as going to the credibility of the witness Buskirk and refused to give the following instruction requested by the Car Company:

"1. The jury are to determine the credibility of the witnesses. If a party or in case of a corporation, the agent of the corporation which represents it in the transaction in question, makes a statement out of court before litigation is involved and especially a statement in writing which statement is against the interest of the party making it, such statement is ordinarily to be taken to be true and unless a reasonable explanation of such statement is given, the jury are amply warranted in believing such statement even though it is contrary to the sworn testimony of the party making such statement."

[2] This action of the trial court is assigned as error. The statements contained in the letters to the Skelton Motor Company as to the amount of materials on hand were too indefinite and uncertain to constitute admissions against interest. It is quite apparent from the language of these letters in the first of which the writer says materials for "300 to 400 cars," and in the second materials for "300 to 500 jobs," that he was making only a general statement, not based on accurate knowledge and not intended to be accurate. In order to be admissible an admission must possess the same degree of certainty as would be required in the evidence which it represents. Furthermore, while the total value of the materials claimed was equivalent to the total value of approximately 650 tops there is nothing in the record which shows the amount of materials claimed to have been left on hand when the contract was breached was more than sufficient to fully complete the number of tops referred to in the letters. Therefore, the court could properly have excluded these letters entirely from the consideration of the jury, and whether it was error to instruct the jury

that the statements contained therein could only be considered as going to the credibility of the witness Buskirk, on the theory that an admission made by a party inconsistent with his testimony goes merely to the credibility of the witness, we need not decide.

[3] The only other evidence which could constitute an admission against interest was the letters of September 25th, wherein the Equipment Company stated it had disposed of the top and curtain materials for which it thereafter demanded 'damages at the trial. The reason demand was made on account of these materials was fully explained by the testimony of Buskirk to the effect that while the contract for the sale of the material had been made the purchaser refused to carry the same out and the material was left on the hands of the Equipment Company.

The Car Company was not entitled as a matter of law to have the jury instructed as requested by it with reference to this admission. Under the weight of authority, the giving of such an instruction would be error in jurisdictions where the trial court may not comment on the weight of the evidence. Westbrook v. Howell, 34 Ill. App. 571; Earp v. Edgington, 107 Tenn. 23, 64 S. W. 40; Johnson v. Stone, 69 Miss. 826, 13 South. 858.

In the case of Gangi v. Fradus, 227 N. Y. 452, 125 N. E. 677, at page 679, the court said:

"In a civil action, statements made out of court or of judicial proceeding or record, or, as they are denominated, extrajudicial admissions, by a party to the action, adverse to his claim, are evidence against him that the facts they state are true. Koester v. Rochester Candy Works, 194 N. Y. 92, 87 N. E. 77, 19 L. R. A. (N. S.) 783, 16 Ann. Cas. 589. They have two phases for the jury's consideration: The one, were they made; the other, their effect. In neither phase have they any characteristic or quality peculiar to themselves, or distinguishing them from the other facts in evidence. It is with them, as with the other facts in evidence, the jury may find they were not made or do not exist. If found to exist, the jury in determining their effect, or probative value or weight, must apply to them the rule of reason. The effect they have, in reason and sound judgment, upon the mind of the jury, in view of their language, character, the time when and person to whom they were made, the circumstances and conditions attending their making, and the other facts in evidence, is the effect they should have upon the claim of the party. In case they were made in ignorance of the facts or in an abnormal state of mind, or were based in part upon mere opinion, or were made casually or thoughtlessly or insincerely, or under like or analogous conditions or circumstances, they may, in reason, deserve slight consideration or value or none at all. In case they were made understandingly and deliberately, are of pure fact within the knowledge of the declarant, and were made under conditions and circumstances conducive to veracity, and are not overborne by the other facts in evidence, they may, in reason and sound judgment, establish a cause of action or a defense. Whether they are of the one class or the other, or intermediate, is for the determination of the jury. The effect they shall have upon the issues being tried is for their determination. The trial justice may not instruct as to the rank assignable to them or the influence to be yielded by them. The jury may accept a part as true and put aside a part as not true. In those respects the law has no gauge."

Finally the Car Company contends the court erred in instructing the jury to find damages for certain profits in the sum of $1,800. This instruction was clearly correct under the provisions of the contract and the undisputed proof.

Finding no error in the record, the judgment is affirmed.