EARP *v.* EDGINGTON.

*(Jackson.* April 27, 1901.)

1. EVIDENCE. *Incompetent as cause for new trial.*

Where the jury has been permitted to hear and consider incompetent evidence without exception, new trial will not be granted on this account alone. *(Post, pp. 29, 30.)*

Cases cited: Ins. Co. *v.* Scales, 101 Tenn., 640; Perey *v.* Perey, 94 Tenn., 331.

2. SAME. *Same.*

But if the Court instructs the jury erroneously and prejudicially as to the consideration of such evidence, that constitutes good cause for new trial. *(Post, pp. 30, 31.)*

3. WILLS. *Admissibility of subsequent declarations of testator.*

Testator's declarations, made subsequently to the making of his will, are not competent to prove that the will was the result of undue influence, or of fraud or force, excited by or on behalf of a few beneficiaries thereunder. *(Post, pp. 31–34.)*

4. SAME. *Poverty and afflictions of contestants not competent.*

It is not competent to prove, on the trial of an issue of *devisavit vel non,* the poverty and afflictions of the contestants. *(Post, pp. 34, 35.)*

5. SAME. *Request on subject of undue influence erroneously refused,*

On the trial of a contest for undue influence, fraud, and force, of a wife's will bequeathing her entire estate to her husband. it is reversible error for the court, after giving a bewildering, if not misleading, charge, to refuse to give this special request on behalf of contestee, to wit: That if the jury found that the husband "was loyal to his wife in her misfortunes, and during the entire period of their married life gave his time and attention to the promotion of her interests and the improvement of her estate under her direction, then they might look to these facts as showing a motive for the making

of the will, and if they further believed from the evidence that it was made because of gratitude and affection for him, and without duress, fraud or undue influence practiced by him on the testatrix, then they· should find for the will." (*Post, pp. 35–37.*)

6. SAME. *Ratification of will obtained through undue influence.*

Although a will may have been made originally as the result of undue influence, fraud or force, still it is valid if the testator, with full knowledge of the facts, and after the removal of all improper influences, freely ratifies and intentionally leaves it as her last will and testament. (*Post, pp. 37, 38.*)

7. CHARGE OF COURT. *Request as to weight of proof of admissions.*

A request for an instruction that the jury may consider and base their verdict upon parol evidence of admissions of a party, is not improperly refused where it does not contain the usual caution to the jury in considering parol evidence of admissions or declarations. (*Post, pp. 38–40.*)

8. SAME. *Same.*

A request for instruction that jury shall consider a party's admissions shown by parol evidence as "strong evidence" of an adverse fact, is erroneous and proprly refused. (*Post, p. 40.*)

FROM SHELBY.

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, J.

PIERSON & EWING and WRIGHT & WRIGHT for Earp.

EDGINGTON & EDGINGTON for Edgington.

BEARD, J. This case involves an issue of *devisavit vel non* as to the will of the late Mary J. Smith.

The alleged testatrix died on February 19, 1897, and soon thereafter the will was probated in common form, and her surviving husband, Jasper N. Smith, qualified as executor. This will was dated May 14, 1886, and by its terms all of the estate, both real and personal, was given absolutely to her husband. In the month of May, 1899, Jasper N. Smith disappeared under circumstances which led to the universal belief that he had been murdered, and thereafter the nieces of Mrs. Smith, residents of the States of Missouri and Arkansas, joining with their husbands, having first secured the appointment of Jesse Edgington as the special administrator of the will of Mary J. Smith, instituted the present proceeding for the purpose of contesting the will.

There have been two trials of this case in the Court below, the first resulting in a verdict against the will, and the last, a new trial having been granted, terminated in a verdict for the will. The trial Judge approving this last verdict, entered judgment accordingly. Bills of exceptions covering both trials were preserved by the contestants, and the case is submitted upon errors assigned to the action of the Circuit Judge in granting a new trial in the first instance, and in refusing it in the second.

In the year 1871, being then a widow, Mrs. Smith married one Moore, who, in the year 1873, either committed suicide or was assassinated. In 1878 she intermarried with Jasper N. Smith. At that time she was possessed of an estate which is shown to have been worth about $6,000, but which by judicious management, great economy, and continued labor on the part of both husband and wife, had been increased at the time of her death to possibly $60,000. Mrs. Smith had a brother, Geo. W. Paine, who died in 1885 childless, and she had one sister, Mrs. Emily Jackson, who resided at the time of the latter's death, in the State of Kansas. Mrs. Jackson was the mother of the female contestants in this case.

In 1881 fierce litigation broke out between Mrs. Smith and her brother George, with regard to certain real estate in Memphis, of which Mrs. Smith held the legal title, and in which Paine claimed a large equity. In the progress of this litigation Paine gave a deposition in which he stated that his sister was the assassin of her fromer husband, Moore. Out of this grew an indictment against Mrs. Smith and her incarceration. The civil suit involving the land terminated in her favor, and in the trial for murder she was subsequently acquitted. These proceedings produced very vindictive feelings on the part of Mrs. Smith, not only toward her brother, who had furnished

Earp *v.* Edgington.

the basis of the prosecution, but also for her sister and family, whom she believed to have been, if nothing more, at least indifferent to her in her great trouble.

On the other hand, her husband was her loyal supporter and constant attendant during this trying ordeal. So in 1881, while in the county jail, she had Mr. Leopold Lehman, then and now a leading attorney of the Memphis bar, to prepare for her a will, in which she gave all of her property of every description to her husband. This will was deposited in the custody of Mr. Patterson, a former employe of Smith, and a prominent citizen of Memphis. In some way Mrs. Smith seems to have concluded that this will was lost, so in 1886 she had Mr. Lehman to prepare the will in controversy, in which, as in that of 1881, all of her estate was given to her husband. This will was deposited with her attorney, and was kept by him in his safe. Of the existence of this last will Mr. Smith evidently had no knowledge until after the death of his wife when both wills came to light, and the one of 1886 was probated in common form.

In the trial of the issue of *devisavit vel non* the material grounds of assault, as stated in the brief of counsel for contestants, were, first, "that the will of Mrs. Smith was procured by the fraud and the undue influence of Jasper N. Smith,"

and, second, "that Mary J. Smith by a later will revoked the one offered for probate."

In granting the motion to set aside the first verdict the Circuit Judge, in answer to the request of the · contestants, reduced to writing his reasons for this action, and the same by proper order is ·made a part of the record. In the course of this opinion, and as stating the final conclusion of the Court, the trial Judge uses the following language :

"Several witnesses have testified about conversations had with Mrs. M. J. Smith, in which she said that she had made another will. No one of them claimed to know any more than this about it.

"Does this evidence come up to and meet the requirements of the Code and the Supreme Court decision, where it holds that a last will may be established upon satisfactory proof that it was duly made and not revoked ? The Court holds it does not, and, therefore, that it erred in allowing the jury to consider such evidence without any limitation on the question as to whether or not another will had been made by Mrs. M. J. Smith. For this error, and others which the Court need not now recite, the motion for a new trial in this case is granted."

To understand the pertinency of these observations, it is proper to state that the purpose of the contestants was to show that from the time

of Mrs. Smith's incarceration her husband industriously plied her with the suggestion that her sister, Mrs. Emily Jackson, and her family, were in sympathy with her brother, Geo. W. Paine, at least to such an extent that they were indifferent to her fate, and that under the influence of the impression thus fraudulenty superinduced, that this was so, when in fact it was untrue, the will of 1881 was made; that after her release from prison, the husband, with the fraudulent purpose of continuing this impression upon the mind of his wife, intercepted letters from Mrs. Jackson and her daughters to Mrs. Smith, and by reiterated denunciation of these relatives exercised such undue influence upon her as that in 1886 the latter, still believing in the indifference or hostility of these parties, made her second will, and that she entertained this belief until she made a short visit to Mrs. Jackson and her family in November, 1896, when discovering the fraud practiced upon her, she returned to Memphis and made a third will providing for these contestants, and that this will was seized by Jasper, immediately after the death of his wife, and destroyed.

To make out these grounds of attack, several witnesses were introduced by the contestants, who testified to conversations at various times with Mrs. Smith, all of which were long subsequent to the execution of the will in question, and only a

short time before her death, which it may be conceded tended to sustain these contentions.

It is to the admission of this testimony that the trial Judge refers in the paragraphs set out above, and for his error in failing properly to limit it, he in part granted the new trial.

It is true this evidence went to the jury without valid objection, and, was thereby made competent (*Ins. Co.* v. *Scales,* 101 Tenn., 640), and in the absence of a special request upon the part of the proponents to have a proper limitation put upon it, if the trial Judge had left it to work out its own effect on the jury, then the proponents could not complain. *Perry* v. *Perry,* 94 Tenn., 331.

The contestants now insist that he did place legal restrictions on this testimony, and that he was in error in assuming otherwise, and having thus mistakenly granted a new trial, inasmuch as there was some evidence to support the verdict of the jury, that they are entitled to a reversal of his action, and a judgment of this Court on the verdict.

But did he properly limit this testimony? In his charge to the jury the trial Judge, after calling attention to the wide range the testimony had taken, added: "I charge you specially that the witnesses you have heard in regard to the condition of mind under which she labored, and the statements which she may have made, were only

competent for you to consider to aid you in ascertaining and determining what the real condition of her mind was, and whether or not she was imposed on by Jasper N. Smith by any artifice or deception of his, or was by him forced or induced to make a will which she would not have made but for such deception, force, or undue influence in the making of said will," etc.

In giving this wide scope to this testimony the trial Judge was in error. For it is settled in this State that subsequent declarations of the testator are not admissible to show undue influence. *Perry* v. *Perry,* supra.

We think he was equally in error in saying to the jury that these declarations could be considered by them in determining whether the testatrix was imposed on by Jasper N. Smith by any artifice or deception, or was under the influence or force exercised by him over her in the making of this will.

The admissibility and effect of the declarations of a testator, made both before and subsequent to the making of a will, have been the subject of frequent discussion, resulting in very divergent conclusions, in the various Courts. It is not our purpose to enter at length into that discussion in this opinion.

We have examined many of the cases, and among them an opinion recently delivered by the Supreme Court of the United States, involving a

paper propounded as the will of Judge Advocate Jo Holt, which, with great ability and research, goes over the whole ground of controversy. This opinion was handed down by Associate Justice Peckham on March 25, 1901, and is reported in the advance sheet of the opinions of that Court. The case referred to is that of *Throckmorton* v. *Holt.*

Among the defenses made to the instrument propounded as the will of the late Judge Holt, were, first, that it was forged; and, second, that it had been revoked. As to the first, Justice Peckham puts this question: "Can the contestants prove by unsworn oral declarations, and by letters of the deceased, facts from which an inference is sought to be drawn that the disposition of the property as made in the paper is improbable, and that the paper was therefore a forgery?"

. The Court held they could not. In the course of the opinion it is said: "The declarations are purely hearsay, being merely unsworn declarations, and when no part of the *res gestae* are not. within any of the recognized exceptions admitting evidence of that kind. Although in some of the cases the remark is made that declarations are admissible which tend to show the state of the affections of the deceased as a mental condition, yet they are generally stated in cases where the mental capacity of the deceased is the subject of the inquiry, and in these cases his declarations on

that subject are just as likely to aid in answering the question as to mental capacity as those upon any other subject. But if the matter in issue be not the mental capacity of the deceased, then such unsworn declarations as indicative of the state of his affections are no more admissible than would be his unsworn declarations as to any other fact. There is another reason why no exception should be made in favor of such evidence upon which to build a presumption or inference of forgery, and that is the inherent weakness and danger of the evidence itself. No inference is generally more uncertain or unreliable than that which is sought to be drawn upon the question of the genuineness of a will from the alleged condition of a testator's mind towards relatives or others as evidenced by his declarations. It is every day experience that declarations of that nature are to the last degree unreliable as a basis for an inference as to probable testamentary disposition of property. Those who thought by reason of such declarations that they would certainly be remembered in the will of the testator are so frequently disappointed, and, that too, in cases where there is not the remotest suspicion of forgery, that it would seem exceedingly unsafe to permit a jury to draw an inference based upon such evidence relative to the genuine character of the instrument propounded as a will. We are therefore of the opinion that the Court below

23 P—3

erred in admitting this evidence upon the issue "of forgery."

Upon the issue of revocation, after an exhaustive review of the authorities bearing thereon, the Court sums up as follows: "There must be an act and an intention in order to revoke. Neither can be inferred from evidence of declarations of a testator apart from the act, and with no proof that the testator ever performed an act of a revocatory nature. Unless a part of the *res gestae,* we see no reason for the admission of these declarations any more than upon the issue of forgery."

We are satisfied with the soundness of reasoning and the strength of the conclusions announced in the opinion, not only as to the inherent weakness, but the incapacity, at least of subsequent declarations of the testator, to show the facts of forgery or revocation.

The reasons that make them incompetent to show these facts would render them incompetent to show that the husband in this case induced his wife, by artifice or deception, or compelled her by force, to execute the will in his favor. So the trial Judge committed affirmative error in saying to the jury that they might consider this evidence in determining the existence or nonexistence of these facts.

The trial Judge committed error also in permitting the witness, Earp, and Mrs. Clark, over

the objection of contestees, to testify at great length and with much of detail as to the generally impoverished condition of all the contestants, and of the comparative blindness of one of them, an unmarried daughter of Mrs. Emily Jackson. This testimony was incompetent, and its only effect could be unduly to excite the sympathy of the jury for these poor kinspeople of the testatrix as against the heirs of Jasper Smith, aliens in blood to Mrs. Smith, the testatrix.

The charge of the Court in this case was very long, dealing with possibly every phase which a contest over a will is likely to assume. Confined to the issues involved, it would have been difficult for an average jury to follow it as a guide in their deliberations over a verdict. The case was one which required the charge, if it was to serve its proper purpose, to be as free from redundancy and superfluous matter as possible. Notwithstanding this necessity, several pages are devoted to the subject of insane delusion, and a hypothetical case is put to the jury, and they were told that should they find that Mrs. Smith was the victim of such delusion when her will was made in 1886, then they should find against it.

There is nothing in the record to warrant this charge. There is no suggestion in the evidence that she was ever subject to insane delusions. On the contrary, she is shown to have been a

woman of strong character, great intelligence, dominating her husband and those about her.

While this of itself would not be reversible error, yet we do think, in view of what has already been said as to the length of the charge, that it was possibly calculated to mislead, and if not, at least to bewilder the jury, and therefore may well be embraced under the general terms, "others," which in part induced the Circuit Judge to set aside the verdict and grant a new trial.

There was further error in the trial Judge in declining to submit to the jury a special request submitted by the contestees, in which he was asked to say that if they found Smith was loyal to his wife in her misfortunes, and during the entire period of their married life gave his time and attention to the promotion of her interests and the improvement of her estate under her direction, then they might look to these facts as showing a motive for the making of her will, and if they further believed from the evidence that it was made because of gratitude to and affection for him, and without duress, fraud, or undue influence practiced by him on the testatrix, then they should find for the will.

This request clearly and briefly stated the theory of the contestees. It was abundantly warranted by the great weight of testimony in the case, and we think would have relieved the jury of

Earp *v.* Edgington.

much of difficulty growing out of the mass of evidence offered in their deliberations, and aided them in arriving at a satisfactory verdict.

Considering the whole case we are satisfied that there were enough errors in the record to make it the duty of the trial Judge to set aside this unwarranted verdict, and the assignment of error on his action in that regard is overruled.

We come now to the second trial and the assignments of error upon the action of the Court below in regard thereto.

1. It is insisted the trial Judge was in error in saying to the jury, in substance, that if they found from the evidence that if Mrs. Smith made her will in 1886 under the belief engendered by the husband that Mrs. Jackson and her daughters had been either indifferent or hostile to her in her troubles, and that upon a visit made to them in the year 1896 she discovered them to possess feelings of affection for her, and thereafter she had no prejudice against them, and that if they further found that she lived in Memphis for some time after her return from this visit, and knew this will was in the possession of her attorney, and went to his office to inquire as to its safety, and made no effort to cancel or destroy it or to make any other will, but permitted it to remain, intending it to be her last will and testament, notwithstanding she had full knowledge that her husband had deceived her as

to the feelings of her family toward her, then their verdict should be for the will.

There was no error in this clause of the charge. Even if it were true that this will had been made as the result of deception practiced by the husband upon her, yet this did not place it beyond the power of the testatrix to ratify it, and if she did so after obtaining knowledge of the deception, and died with the intention that it should be her last will and testament, then, as a matter of law, it should be established.

On the subject of ratification, see Pritchard on Wills, Secs. 124, 150; 1 Red. on Wills, 514; *Floyd* v. *Floyd,* 3 Strob., 44 (S. C., 49 Am. Dec., 626).

2. Assignments of error Nos. 2 and 3 are upon the action of the Court in declining to grant two special requests of the contestants, as follows:

"The statements and admissions of Jasper N. Smith, made after the death of his wife, if found by you from the evidence, are competent to show the destruction or suppression by him of a will made by Mary J. Smith after her visit to her relatives, and should be so considered by you.

"If you find that the beneficiary, Jasper N. Smith, admitted, after the death of Mary J. Smith, that said Mary J. Smith had made a later and different will from the one of 1886 offered for

probate, and that he had suppressed or destroyed the same, then you will find against the will."

These requests were directed to the testimony of one Miller, a witness for contestants, who, upon his own confession, had met Jasper Smith but three times in his life, and then upon chance occasions. At each of these meetings both were drinking, and Smith was more or less under the influence of the liquor. Upon one of these occasions he testified Smith stated to him that he had substituted an older for a later will of his wife.

Verbal admissions deliberately made may afford proof of the most satisfactory character. But evidence of casual statements or admissions by a party, made in a casual conversation with another, is regarded as affording weak support to that which they are adduced to prove. It is universally agreed that they are of little weight, and unless corroborated, are to be received with caution. *Wittick* v. *Keifer,* 31 Ala., 199; *Railroad Co.* v. *Kerler,* 88 Ga., 39; *Becker* v. *Crow,* 7 Bush (Ky.), 198; *Prater* v. *Frazier,* 11 Ark., 249; *Haven* v. *Mask,* 67 Wis., 493.

In the case at bar, after a careful reading of the testimony of this witness, we are satisfied that it is subject to great suspicion. So that if the trial Judge had called the attention of the jury to these alleged admissions, it would have been his duty to have admonished them of

their inherent probative weakness. The special requests were properly declined, failing as they did to embody any limitation or qualification as to such evidence.

4. The special request the refusal to give which is made the basis of the fourth assignment of error, is more objectionable than the two just disposed of. There the trial Judge is asked to say that if they believed these admissions, then they might consider them as "strong evidence" that Mrs. Smith had revoked the will in controversy. Other objections out of the way, it is apparent this request was properly rejected as the weight of testimony introduced is for the jury and not for the Court to determine.

Finally, we have examined the portions of the charge of the trial Judge covered by the fifth, sixth, and seventh assignments of error, and do not find them open to the criticism made upon them. In view of the length of this opinion we are content to say these assignments are overruled.

From an inspection of this record we are satisfied the merits of the case have been reached, and that the plaintiffs in error have failed to point out any error in the conduct of the last trial. It follows that the judgment of the lower Court is affirmed.