## JOHN YORTY
### *v.*
### ANNIE E. WEBSTER.

*Opinion filed December 16, 1903.*

1. WILLS—*what does not amount to undue influence.* Inducing a favorable bequest or devise as the result of long acquaintance, kindly acts, upright conduct, or even reasonable persuasion, is not undue influence.

2. SAME—*inequality in disposition of property does not establish undue influence.* Inequality in the distribution of property by a will does not conclusively establish undue influence, but is a mere circumstance to be considered in connection with other circumstances.

APPEAL from the Circuit Court of Lee county; the Hon. JAMES S. BAUME, Judge, presiding.

A. C. BARDWELL, for appellant.

A. F. WINGERT, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is a petition filed in the county court of Lee county for the probate of the last will and testament of Barbara E. Leech, deceased. The case was before us at a former term, and is reported in 194 Ill. 408, to which reference is made for a more complete statement. The errors assigned are in the court granting proponent's motion to direct the jury to find a verdict for the proponent, and in refusing to admit competent evidence to go to the jury in behalf of the contestant.

Appellant filed no brief as required under the rules of this court, but simply files a statement with a lengthy argument, contending that Charles E. Hicks, a nephew, was in position to, and thereby did, use undue influence over the deceased, and also argues that Nancy Brown, a niece, who had lived with the testatrix a portion of the time, did not receive anything under the testatrix's will, but does not cite a particle of evidence to sustain his position with reference to undue influence exercised by Hicks. The evidence shows that Hicks went to live with the deceased and her husband when he was thirteen years of age, and made his home with them, as a member of the family, until about the time he was of age, (Mrs. Leech never having had any children,) and during the time he lived with them he worked for them the same as if he was their child, and for a few years was a partner with Mr. Leech in a store and had the management of the entire business. Hicks later on moved to the State of Nebraska, where he has ever since made his home. After the death of her husband, which was about two years prior to her death, the testatrix depended upon Hicks altogether for advice, being in constant correspondence with him, and Mr. Leech made him the executor of his will, but being a non-resident he was unable to act. Hicks returned about the time of his uncle's death and remained with his aunt for a month or more, and during that time assisted the testatrix in probating her husband's will and settling up the business, and during the time he was there accompanied his aunt, together with the niece, Nancy Brown, to the city of Dixon, being the county seat, to attend to some business in reference to the estate and to probate the will of Mr. Leech, in which Hicks was a legatee, and during the day they went to an attorney's office and left a memorandum with the attorney, from which he was directed by Mrs. Leech to draw the will in question. The memorandum was in Hicks' handwriting, but the attorney took it and went

over it very carefully and interrogated the testatrix with reference to the amount each of the legatees was to receive, which information she gave without any hesitancy and without reference to the memorandum furnished. There were thirty-four bequests in her will, to her brothers and sisters and nephews and nieces, Charles E. Hicks receiving the greater part of the estate, which was valued at something over $20,000. The attorney drafted the will as directed by the testatrix and mailed it to her at her home, and in about three days afterwards she had witnesses called in to witness the same. It is admitted by appellant that Mrs. Leech was of sound mind, and the evidence shows her to have been a woman of strong mind and positive in her views, and when she once made up her mind in reference to a thing it was hard to change it.

We are unable to find any evidence in the record tending to support appellant's contention that the testatrix was influenced by anything that was said or done by Hicks in making the disposition she did of her property. The evidence shows that she was very much attached to him and frequently spoke of him in high esteem, and it is true she depended upon him for advice; but advice sought and properly given does not indicate undue influence. "It has often been decided by this court that mere persuasion or advice, however importunate, will not justify the setting aside of a will. * * * Undue influence, to justify the setting aside of a will, must be such as will deprive the testator of his or her free agency." (*Taylor* v. *Pegram,* 151 Ill. 106; *Francis* v. *Wilkinson,* 147 id. 370; *Thompson* v. *Bennett,* 194 id. 57.) In our former opinion we found: "There was no evidence of any specific acts or efforts by Hicks to influence her to make the will as it was made. * * * The evidence, without contradiction, established that she was neither imposed upon in the terms of the will nor ignorant of what she was doing, but that she understood exactly what the will was and intended to make it as she did." The evidence

being practically the same as it was upon the former trial, we see no reason for changing our views from the above findings.

It is further argued that the property was not equally distributed among the legatees. But we have repeatedly held that inequality in distribution of property by will is not of itself conclusive evidence of undue influence, but that it is only a mere circumstance tending to show undue influence in connection with the proven circumstances. If there was evidence in the record which, taken with all reasonable intendments and inferences, fairly tended to show that the making of the will in question was the result of undue influence exercised over the testatrix by Charles E. Hicks, then the instruction directing the jury to find for the proponent should not have been given; but we have carefully examined the record with this proposition in mind, and are satisfied that there is no such evidence. The evidence in the record is abundant to show that the testatrix favored Charles E. Hicks, but unless the benefit received by him was the result of some fraud, misrepresentation, deceit, or other improper conduct on the part of said Hicks, it cannot be said that the will or its provisions was or were the result of undue influence. When one from long acquaintance, upright conduct and kindly acts, or even by reasonable persuasion, induces another to favor him in the disposition of his or her property by will, he is entitled to such benefit. The law does not attempt to make wills for people, but its policy is to uphold wills made by them. The testatrix had the unquestioned right to bestow her bounty where and on whom she pleased. This is so even where there are children, and much more so where those claiming adversely to the provisions of the will stand as collateral heirs.

Much of the evidence in the case and the argument of counsel was directed to the proposition that Nancy Brown, a niece, who was about twenty-seven years of

age, had for a number of years lived with and had been very attentive to the testatrix and her husband, rendering both valuable services, and was held in high esteem by them, and was frequently spoken of by them in terms of praise in conversations with their neighbors. Mr. Leech by his will left her $500, and it is contended that the fact that the testatrix left her nothing is strong evidence that the provisions of her will and the lack of recognition were the result of undue influence of Charles E. Hicks. There is not a word of evidence in the record showing, or tending to show, that Hicks ever had or showed any hostility towards Nancy Brown, or that he had at any time sought to induce the testatrix to treat her otherwise than she had previously done, or to ignore her in her will. As we have said, Charles E. Hicks was, at the best, but a few weeks with the testatrix after the death of her husband. The testatrix lived nearly two years after her husband's death, and Nancy Brown continued to be with her and render her service. If this were an action for services of Nancy Brown, the evidence relative to the service rendered would be applicable and carry with it much force, but as tending to show that Charles E. Hicks exercised undue influence over the testatrix, and thereby procured the making of the will in question, we cannot see that it has any force.

The appellant offered to prove by Nancy Brown that while she and Mrs. Leech were in the cemetery upon the day they were in Dixon and the day that the will was made, Mrs. Leech said to her, "Charlie is going to make my will;" also, after the return from Dixon, that she had a conversation with Hicks in the hearing of Mrs. Leech, in which he said, "You want to be good to your aunt, for she has remembered you in her will." This evidence was excluded. We see no objection to the refusal to admit this testimony. If it had been introduced it would have proved nothing, and there is no evidence that Charles did make her will or had anything to do with the making of

it, except the making of the memorandum from which the will was made. The evidence shows very clearly that his act in that regard was no more than that of a clerk or amanuensis. When the memorandum was presented to the attorney Mrs. Leech went over the whole matter of her bequests, and stated to the attorney, independently of the memorandum, just the disposition she had in mind and desired, and then directed the attorney, then and there, to copy the memorandum and use his own copy for his guidance, that she might, as she did, take the original copy away with her. It was three or four days after the directions for the preparation of the will were given the attorney before it was prepared and mailed to the testatrix, and when she received it she called one witness herself and sent Hicks for two others, and executed it. It is not reasonable to believe she was so under the influence of Hicks that if she had, upon reflection, concluded the terms were more favorable to Hicks than she wished or the provisions as to any of her kin less favorable than she intended, she could not, at any time within the three or four days, have had it changed to suit her; or if it be possible that the presence of Hicks so operated on her mind that she was not a free agent, it is inconceivable that after he left and returned to his home in Nebraska, and the testatrix was away from him and surrounded by and near to those now complaining, it would not have occurred to her she had done some others and herself an injustice by the will she had made and which was still in her possession and control, and either by a new will or codicil have made the changes she desired. These considerations move us to the conclusion that the will in question was as the testatrix desired it should be, and that it should have been, and was properly, admitted to probate.

The judgment of the circuit court is in accord with the views we have herein expressed, and it is affirmed.

*Judgment affirmed.*