DAN HOBSON *et al. v.* H. C. MOORMAN.

(*Jackson.*   April Term, 1905.)

**WILLS.** . Admissibility of testator's previous declarations to show
incapacity and susceptibility to extraneous influences, but not
to prove fact of undue influence.

Where a will is sought to be impeached, or the probate thereof
is resisted, on the ground of undue influence and testamentary
incapacity, the declarations of the testator made previous to
the execution of the will, while admissible to show his mental
incapacity and susceptibility to extraneous influences, are inad-
missible as substantive evidence to prove the fact of undue in-
fluence.

Cases cited, distinguished, and approved:   Brown v. Mooore, 6
Yer., 272; Patton v. Allison, 7 Hum., 320; Smiley v. Gambill,
2 Head, 164; Demonbreun v. Walker, 4 Bax., 199; Beadles v.
Alexander, 9 Bax., 604; Linch v. Linch, 1 Lea, 526; Maxwell v.
Hill, 89 Tenn., 584; Peery v. Peery, 94 Tenn., 328; Kirkpatrick v.
Jenkins, 96 Tenn., 85; Earp v. Edgington, 107 Tenn., 31; Throck-
morton v. Holt, 180 U. S., 552, 45 L. Ed., 663; Shailer v. Bum-
stead, 99 Mass., 122; Rusling v. Rusling, 36 N. J. Eq., 603, 607;
Calkins v. Calkins, 112 Cal., 296; Donovan's Estate, In re., 140
Cal., 390; Jones v. Grogan, 98 Ga., 552; Bevelot v. Lestrade, 153
Ill., 625; Yorty v. Webster, 205 Ill., 630; Griffith v. Diffenderf-
fer, 50 Md., 466; Middleditch v. Williams, 45 N. J. Eq., 726;
Wiltsey's Will, In re, 122 Iowa, 423; Waterman v. Whitney, 11 N.
Y., 157; Herster v. Herster, 122 Pa., 239; Townsend's Estate,
In re, 122 Iowa, 246; Power's Ex'r v. Powers (Ky.), 78 S. W.
152; Marx v. McGlynn, 88 N. Y., 357, 374; Meeker v. Boylan, 28
N. J. Law, 274; Bush v. Bush, 87 Mo. 480; Pemberton's Case,
40 N. J. Eq., 520; McConnell v. Wildes, 153 Mass., 487; Eastis
v. Montgomery, 95 Ala., 486; Ormsby v. Webb, 134 U. S., 47,
33 L. Ed., 805.

FROM FAYETTE.

Appeal from the Circuit Court of Fayette County.—
R. E. MAIDEN, Judge.

BULLOCK & TIMBERLAKE and CHAS. A. STAINBACK, for
Hobson.

T. K. RIDDICK, T. J. FLIPPIN, WM. M. MAYO, and C.
W. CRAWFORD, for Moorman.

MR. JUSTICE McALISTER delivered the opinion of the
Court.

This is an issue of *devisavit vel non* from the circuit
court of Fayette county. The will in controversy was
executed by Mrs. Jane B. George, on the 23d day of
October, 1899, and is attacked upon the ground of un-
due influence and want of testamentary capacity. The
contestants are Lizzie Hobson, John D. Boyd, and
Harry Boyd, family servants of the testatrix, and lega-
tees under a prior will executed on the 29th day of
June, 1898. The proponent of the present will is H. C.
Moorman, who was appointed administrator *cum testa-
mento annexo*. The case has been tried several times
in the circuit court and once in this court, at the April
term, 1902. On the first trial in the circuit court, Jan-

uary term, 1901, a verdict was rendered against the validity of the will. A new trial was granted as to the beneficiaries in said will, except Mrs. Goosman; but as to her a new trial was refused, upon the ground that the evidence showed that she had exercised an undue influence over the testatrix in procuring a testamentary benefit. On the second trial at the May term, 1901, the validity of the will was sustained as to the remaining beneficiaries. On appeal to this court, the judgment below was reversed and the cause remanded, upon the ground that the paper writing was indivisible, and there should be a new trial touching the validity of the entire instrument. On the remandment the case was again tried at the March term, 1903; the jury disagreeing and a mistrial being entered. The last trial, in November term, 1904, resulted in a verdict sustaining said paper writing as the last will and testament of Mrs. Jane B. George. The contestants appealed and have assigned numerous errors. As already stated the will in controversy was executed on the 23d day of October, 1899, and is as follows:

"I, Jane B. George of Somerville Tennessee, do make and publish this as my last will and testament, hereby revoking and making void all others by me at any time made.

"First—I direct that my funeral expenses and all debts, if any I owe, be paid as soon after my death as possible, out of any money that I may die possessed of.

"Second—I will, devise and bequeath to George

Gossman, of Somerville, Tennessee, one thousand dollars in money.

"Third—I will, devise and bequeath all the balance of my property, real, personal and mixed, of every character and description, wherever situated, to the following named persons, to wit: To Mrs. Lizzie Riley, John H. McElwee, Louis McElwee, Mrs. Mattie F. Goosman, the children of Mrs. Emmaline Ervin and the children of Jerome McElwee, the children of each taking one share, it being my intention that my entire estate, after paying burial expenses and debts and legacy provided for in item second, shall be equally divided, share and share alike, among the persons named, that is, one share to Mrs. Lizzie Riley, one share to John H. McElwee, one share to Louis McElwee, one share to Mrs. Mattie F. Goosman, one share to the children of Mrs. Emmaline Ervin, one share to the children of Jerome McElwee, thus making six equal shares.

"Fourth—I do not appoint any executor; the court can appoint some one to execute this will and require proper bond and security.

"In witness whereof, I do, to this, my will, set my hand, this 23d day of October, 1899.

"JANE B. GEORGE.

"Signed and published in our presence, and we have subscribed our names hereto, as witnesses, at the request of the testatrix, in her presence and in the presence of each other.

"This Oct. 23rd, 1899.

"H. C. MOORMAN.

"WM. B. GRANBERRY."

This latter will was essentially different from the first will, executed on the 29th of June, 1898. In the first will, the testatrix devised to her nephew, John Harvey McElwee, all her real estate and household goods, together with a specific legacy of $4,500, and he was also made residuary legatee. The last will devised to him an undivided one-sixth interest in the estate. In the first will the testatrix bequeathed to Lizzie Hobson a legacy of $250, while under the last will she was entirely excluded. John D. Boyd and Harry Boyd, under the first will, were bequeathed the interest on $250 each annually, while the last will gave them nothing. In the first will Rev. J. F. Lloyd was left a legacy of $250, while he is not mentioned at all in the last will. The first will gave to Mrs. Lizzie Riley, niece of the testatrix, $1. Under the last will she takes an undivided one-sixth interest in the estate, after deducting the legacy to George Goosman. Louis McElwee, a nephew under the first will was given the sum of $1, while under the last will he takes an undivided one-sixth interest in the estate, after deducting the legacy. Under the first will the testatrix made no bequest whatever to Mrs. Mattie Goosman, while under the last will she is given an undivided one-sixth interest in the estate, after deducting the legacy given to her son George. The first will gave to Jimmie and Lizzie Ervin, children of Em-

maline Ervin, a legacy of $500 each, while the last will gives them an undivided one-sixth interest in the estate, after deducting George Goosman's legacy. In the first will John Harvey McElwee was nominated executor to act without bond, while no appointment of an executor is made in the last will.

These are the cardinal and differential features of the two wills. It is said in the brief of counsel for the proponent, that the real contestant of the present will is John Harvey McElwee, although nominally Lizzie Hobson and John and Harry Boyd, legatees and family servants of the testatrix, are the contestants of record, who are prosecuting this appeal in *forma pauperis*. The theory of contestants is that the will executed on the 29th of June, 1898, was the real testamentary act of the testator, executed while in the possession of all of her intellectual faculties and entirely removed from any dominating influences. It is said that, in executing the first will, she took counsel of her spiritual adviser, Rev. J. F. Lloyd and of her regular attorney, Hon. E. R. Scruggs.

But it is further said that, shortly after the execution of the codicils to the first will, in April and September, 1899, Mrs. George sustained a very serious fall, which confined her to her bed, and that while so prostrated she fell under the influence of Mrs. Goosman, Mrs. Riley, and others, who induced her to make the second will, which did not represent her testamentary wishes, but in reality was the testament of those exerting this

undue influence.   It is, moreover, contended that when
the first will was executed Mrs. George was of sound
mind and disposing memory, while at the date of the
execution of the second will she was in a state of senile
dementia, which rendered her incapable of performing
a testamentary act.

On the other hand, the theory of the proponent is
thus stated in the language of his counsel, which we
quote from his brief as follows:

"Up to June, 1898, Mrs. George had intended to be-
queath her property to Mrs. Goosman, her son, George
Goosman, and to the nieces and nephews of Mrs. George
herself.   Mrs. Goosman was the second cousin and
adopted daughter of Mrs. George.   Their relations
were as intimate and friendly as they could have been,
until June, 1898, when Mrs. George was led to believe
that Mr. and Mrs. Goosman tried to poison her in order
to get her property.   Under the influence of this belief,
she made a will, on June 29, 1898, disposing of her
property in an entirely different way from what she
had previously contemplated.   There is no pretense
that this belief was well founded, but Mrs. George per-
sisted in it for several months.   Proponent's theory is
that she was encouraged in this belief by Mrs. Hazle-
wood, Lizzie Hobson, and John Harvey McElwee, but
they deny it.   Early in the year 1899, however, she be-
came convinced that she had been poisoned, and immed-
iately began to change her will.   She added one codicil
in April, 1899, and one in September, 1899.   These cod-

icils changed the will so much that, to use her own ex-
pression, she 'hardly knew what was in it.' So she
finally resolved to make a new will altogether, which
she did on October 23, 1899. This contained practically
the same disposition of her property which she intended
to make prior to the poisoning episode, and is the will
now under contest."

We shall not, at this point, enter upon an examination
of the evidence in support of these respective theories,
but will have occasion, in the consideration of the as-
signments of error on the admission and exclusion of
evidence, to make an additional statement of the facts.
We will say, however, that our examination of the
record has satisfied us that the verdict of the jury and
the judgment of the court is supported by material
evidence.

The first assignment of error made by contestants
is based upon the action of the trial judge in excluding
evidence of the declarations of the testatrix, made prior
to the execution of the will in issue, for the purpose of
establishing undue influence. On this subject the court
charged the jury as follows:

"Gentlemen of the jury, during the progress of this
trial the court permitted the parties to introduce proof
of declarations alleged to have been made by Mrs.
George both previous and subsequent to the execution
of the will in controversy, and the court has already
said to you that, if you find independent and substan-
tive evidence in this case of undue influence, you might

Hobson v. Moorman.

look to these previous and subsequent declarations of Mrs. George, along with the other proof in the case, for the purpose of determining what the condition of her mind was at the time she performed the alleged testamentary act, and the court now instructs you especially that you cannot look to and consider any declarations made by Mrs. George, previous or subsequent to the execution of the will in controversy, as evidence of undue influence. Such declarations—that is to say, declarations made by Mrs. George before or subsequent to the execution of the will in controversy—are not evidence of undue influence, and cannot be looked to and considered by you for that purpose; but, if you find independent evidence of undue influence in this case, then you may look to such declarations along with all other proof in the case, for the purpose of determining the condition of Mrs. George's mind at the time it is alleged she executed the will in question, as I have already instructed you, but such declarations are only competent for this purpose."

As illustrating the effect of the charge of the court in excluding evidence of previous declarations on the part of the testatrix, counsel for contestants have formulated the following propositions, viz.:

"(1) The hostile feelings of testatrix for Mrs. Goosman and her intention to exclude her from any testamentary disposition, evidenced by her declarations to third parties, her letters, and the first will, were competent and material facts to be considered as directly bearing upon the issue of undue influence; that is to say,

whether the change in the will in issue from the previously expressed feelings and intention of testatrix was attributable to the volition of the testatrix or to the exercise of an undue influence.

"(2)   That the affection of testatrix for J. H. McElwee, and her intention to make him the main object of her bounty, evidenced by her declarations to third parties, her letters, the first will, and memorandum prepared for draft of the same, were competent and material facts to be considered as directly bearing upon the issue of undue influence; that is to say, whether the change in the will in issue from the previously expressed feelings and intentions of the testatrix was attributable to the volition of testatrix or an undue influence.

"(3)   That the feelings and testamentary intentions of testatrix towards Lizzie Riley and Louis McElwee, and her reasons therefor, evidenced by her declarations to third parties, the first will, and said memorandum, were competent and material facts to be considered as directly bearing upon the issue of undue influence; that is to say, whether the change of feeling and intention indicated in the will in issue from the previous intentions and feelings of testatrix was attributable to the volition of testatrix or an undue influence.

"(4)   That the feelings and testamentary intentions of testatrix toward her minister and family servant, evidenced by her declarations to third parties, the said first will, and said memorandum, were for the reasons

before indicated competent and material facts to be considered upon the issue of undue influence.

"(5)   That the state of mind of testatrix as to the disposition of her property at the time of the execution of her first will—that is, her intention to make her nephew her main beneficiary in her first will, in consideration of his taking charge, in her old age, of her affairs—is a material and competent fact bearing directly upon the issue of undue influence; that is to say, whether her failure to keep her promise and her radical change from her intentions to do so are attributable to her volition or an undue influence.

"(6)   That testatrix's state of mind, with regard to Mrs. Goosman having a power or influence over her she could not resist, was a competent and material fact to be considered as directly bearing upon the issue of undue influence; that is to say, it was a material fact which the jury might consider, in view of the radical changes, indicated by the last will, from the previously expressed feelings and intentions of testatrix, as tending to show the last will was not of the volition of testatrix, but the result of undue influence.

"Also, the same was competent and material to show that testatrix's mind was easily or readily susceptible to the influence and control of Mrs. Goosman.

"(7)   That the declarations of Mrs. George, to the effect that Mrs. Goosman was intimidating her and endeavoring to get her to make another will, were com-

petent and material evidence to be considered as bearing directly upon the question of undue influence."

It will be observed, from a careful examination of the foregoing propositions, that the majority of them proceed upon the idea that the trial judge excluded the declarations of testatrix, tending to show her feelings, testamentary purposes, intentions, etc. This is a misconception of the action of the trial judge. On this subject the trial judge charged the jury as follows:

"You may also look to and consider her declarations and statements at the time of the alleged testamentary act and drafting of said alleged will, if she made any, as well as all her declarations and statements, both subsequent and prior to the execution of the will, as to her intentions as to her property and her kinsmen, etc., etc., whether friendly or unfriendly, as well as to any previous will or wills which she may have made, as expressive of her then purpose and intention.

An examination of the record will show that a very wide scope was given to the introduction of the declarations of the testatrix as evidence, and that they were held competent by the circuit judge in his instructions to the jury for every purpose, except to establish the fact of undue influence.

The cardinal inquiry presented upon the first assignment of error is whether as a matter of law such declarations were competent as substantive evidence of undue influence. It is conceded on the brief of counsel for contestants that subsequent declarations are not competent

Hobson v. Moorman.

evidence to establish undue influence. The law on this subject is well settled in this State. *Peery* v. *Peery,* 94 Tenn., 328, 29 S. W., 1; *Earp* v. *Edgington,* 107 Tenn., 31, 64 S. W., 40. But the contention now made is that there is a difference in principle between declarations of the testatrix, made prior to the execution of the will, and those subsequently made. Hence it is earnestly insisted that, while the evidence of subsequent declarations has been uniformly rejected, proof of prior declarations, tending to establish the fact of undue influence, have been received in this State. It will be useful at this point to review our decisions on this subject, at least so far as they are claimed by contestants to support the propositions now propounded. The first case referred to is that of *Brown* v. *Moore,* 6 Yerg., 272. In that case it appeared that on the trial in the circuit court the contestants offered to prove that James Langford, devisee in the will, acknowledged that undue influence was exercised to induce the making of the will, and that forged letters were read to testator by the devisees, before the making of the will, to exasperate him against his other children, who were disinherited. The court below rejected this testimony; but, on appeal, this court held that said evidence was competent. This case did not involve proof of declarations on the part of testator tending to show undue influence. It appeared from the record that the testator had long spoken of his intention to give his estate to his son, William Moore, and of excluding those whom he disinherited from any

participation in his estate. But this latter proof was in conformity with the well-recognized rule that proof of testamentary intentions and purposes on the part of the testator may be shown by his declarations.

The next case cited is that of *Patton, Executor,* v. *Allison,* 7 Humph., 320. In that case it was merely held that previous declarations of the testator, in conformity with his will, are admissible for the purpose of showing knowledge on his part of the contents of his will. It was intimated in that case that declarations of the testator, of a contrary character, were also admissible; but this point was not decided and did not arise in the record, and the language of the court was obiter.

The next case cited is *Smiley* v. *Gambill,* 2 Head, 164, wherein it was held that the revocation of a will is a question of intention, and the acts, conduct, and declarations of the maker of the will are admissible for the purpose of ascertaining whether it was revoked. *Demonbreun* v. *Walker,* 4 Baxt., 199, simply holds that written declarations of the testator are competent to show his intentions as to the disposition of his property. In that case a paper purporting to have been executed as a will, years anterior to the date of the will in contest, was held competent for this purpose.

In *Maxwell* v. *Hill,* 89 Tenn., 584, 15 S. W., 253, it was held that the testator's declarations, whether made before or after the execution of his will, with reference to the dispositions he proposed to make, or had made, of his property, are competent evidence to show whether

or not he fully comprehended and approved the will as written.

The case of *Beadles* v. *Alexander,* 9 Baxt., 604, held that subsequent declarations of the testator were competent to show that the testator had in fact signed his will in the presence of both of the subscribing witnesses.

The case of *Linch* v. *Linch,* 1 Lea, 526, approved the rule announced in *Beadles* v. *Alexander,* supra. In the *Linch Case* the question of undue influence was probably the main issue. The trial judge had instructed the jury as follows: "When you come to consider the question of undue influence, the declarations of the testator in reference to his will cannot be considered by you, unless they were made at the time the will was written, or executed, or republished, in the presence of attesting witnesses, or declarations to or in the presence of his wife." This court held the charge erroneous, and referred to the case of *Beadles* v. *Alexander,* supra, as having settled the law to the contrary. It does not appear, from the published opinion in that case, what was the character of the declarations sought to be introduced, whether antecedent or subsequent to the execution of the will.

The next case cited is *Peery* v. *Peery,* 94 Tenn., 328, 29 S. W., 1. The will in that case was attacked because of undue influence and mental infirmity of the testator. The point ruled was that subsequent declarations of the testator that he had to make the will as he did to have peace at home are admissible to show his mental

condition at the time of the execution of the will, but
not to show undue influence. If there be other evidence
of undue influence, then such declaration could be looked
to to determine the effect which such influence had up-
on the testator, but not to prove the substantive fact of
undue influence. The admissibility of antecedent dec-
larations was not involved or determined. The next
case cited is *Kirkpatrick* v. *Jenkins,* 96 Tenn., 85, 33 S.
W., 819. It involved an issue of *devisavit vel non,* and
the contest was based on the want of mental capacity
and undue influence. Said the court, through Judge
Caldwell, viz.: "Though the cases are not harmonious,
we think the great weight of authority and reason is
to the effect that subsequent declarations of an al-
leged testator may be considered by the jury upon an is-
sue of mental incapacity, but that they cannot be con-
sidered by the jury upon an issue of undue influence,
unless there be independent proof indicating the pres-
ence of undue influence, and then only to show a con-
dition of mind susceptible to such influence and the
effect thereof upon the testamentary act." No
question arose in that case in respect of the com-
petency of antecedent declarations as primary evi-
dence of undue influence. The last case in which the
question of declarations was considered by this court
is that of *Earp* v. *Edgington,* 107 Tenn., 31, 64 S. W.,
40. There was no question of antecedent declarations,
but the ruling of the court related to subsequent de-
clarations, holding them to be incompetent. The court

cited with approval the opinion of Justice Peckham, in. *Throckmorton* v. *Holt,* 180 U. S., 552, 21 Sup. Ct., 474, 45 L. Ed., 663, in which it was said, viz.: "The declarations are purely hearsay, being merely unsworn declarations, and, when no part of the *res gestae,* are not within any of the recognized exceptions admitting evidence of that kind. Although in some of the cases the remark is made that declarations are admissible which tend to show the state of the affections of deceased as a mental condition, yet they are generally stated in cases where the mental capacity of the deceased is the subject of the inquiry, and in these cases his declarations on that subject are just as likely to aid in answering the question as to mental capacity as those upon any other subject. But, if the matter in issue be not the mental capacity of the deceased, then such unsworn declarations, as indicative of the state of his affections, are no more admissible than would be his sworn declarations as to any other fact."

In the *Throckmorton Case,* Justice Peckham, after citing the authorities on both sides of the question, said: "After much reflection upon the subject, we are inclined to the opinion that not only is the weight of authority with the cases which exclude the evidence both before and after the execution, but the principles upon which our law of evidence is founded necessitate that exclusion." In the present case the will is sought to be impeached, both on account of undue influence and for want of testamentary capacity.

Mr. Wigmore, in his exhaustive treatise on the Law of Evidence (volume 3, section 1734), divides the declarations of a testator into seven different classifications, and states that in using any of these it is essential to keep in mind (1) what is the fact which the utterance is offered to evidence; (2) whether this fact is relevant, and in what way; (3) supposing it to be relevant, whether the utterance is admissible to evidence it. Under the fifth classification the author considers declarations that a particular will was procured by fraud or undue influence. At section 1738 the author treats this subject as follows:

"Utterances of the fifth and sixth classes, already enumerated, may be regarded in several aspects. The chief distinction is between their use as direct assertion of the fact of fraud or undue influence, for here they are met immediately by the hearsay rule, and their use as indicating directly or indirectly a condition of mind relevant to the issue, for here they are admissible either as circumstantial evidence or as statements of a mental condition under the present exception.

"The testator's assertion that a person named or unnamed, has procured him, by fraud or by pressure, to execute a will, or to insert a provision, is plainly obnoxious to the hearsay rule, if offered as evidence that the fact asserted did occur.

"1868, Colt, J., in *Shailer* v. *Bumstead*, 99 Mass., 122: 'When used for such purpose, they are mere hearsay, which, by reason of the death of the party whose

statements are so offered, can never be explained or con-
tradicted by him.  Obtained, it may be, by deception or
persuasion, and always liable to the infirmities of human
recollection, their admission for such purpose would
go far to destroy the security which it is essential to
preserve.'  They are thus inadmissible, so far as they
form 'a declaration or narrative to show the fact of
fraud or undue influence at a previous period.'   *  *  *

"But these utterances may be nevertheless availed
of as evidence of the testator's mental condition, if the
latter fact is relevant.  Though the issue is as to his
mental condition, with regard to deception or duress
at the time of execution, yet his mental state, both be-
fore and afterwards, is admissible as evidence of his
state at that time (on the principles of sections 230,
242, 394, 395, ante).  Thus the question is reduced to
a simple one, namely, what particular mental condi-
tions of the testator, thus evidenced, are material as
being involved in the broader issue of deception or un-
due influence?  There are here recognized by the
courts two distinct sorts of mental condition.

"The existence of undue influence or deception in-
volves incidentally a consideration of the testator's
incapacity to resist pressure and his susceptibility to
deceit, whether in general or by a particular person.
This requires a consideration of many circumstances,
including his state of affections or dislike for particular
persons benefited or not benefited by the will, of his
inclinations to obey or to resist these persons, and, in

general, of his mental and emotional condition, with
reference to its being affected by any of the persons
concerned.    All utterances and conduct, therefore, af-
fording   any indication of this sort of mental condi-
tion, are admissible, in order that from these the condi-
tion at various times not too remote may be used as
the basis for inferring his condition at the time in issue.
This use of such data is universally conceded to be
proper.

"1883, Dixon, J., in *Rusling* v. *Rusling,* 36 N. J. Eq.,
603, 607: 'When undue influence is set up in impeach-
ment of a will the ground of invalidity to be established
is that the conduct of others has so operated upon the
testator's mind as to constrain him to execute an in-
strument to which of his first will he would not have ·
assented.  This involves two things:  First, the conduct
of those by whom the influence is said to have been
exerted; second, the mental state of the testator, as pro-
duced by such conduct, which may require a disclosure
of the strength of mind of the decedent and his testa-
mentary purposes, both immediately before the con-
duct complained of and while subjected to its in-
fluence.  In order to show the testator's mental state at
any given time, his declarations at that time are compe-
tent, because the conditions of the mind are revealed to
us only by its external manifestations, of which speech
is one.  Likewise the state of mind at one time is com-
petent evidence of its state at other times not too re-
mote, because mental conditions have some degree of

permanency. Hence, in an inquiry respecting the testator's state of mind, before or pending the exertion of the alleged influence, his words, as well as his other behavior, may be shown for the purpose of bringing into view the mental condition which produced them, and, through that, the antecedent and subsequent conditions. To this extent his declarations have legal value. But, for the purpose of proving matters not related to his existing mental state, the assertions of the testator are mere hearsay. They cannot be regarded as evidence of previous occurrences, unless they come within one of the recognized exceptions to the rule excluding hearsay testimony.' "

Mr. Elliott, in his work on Evidence (volume 1, secs. 5333), says: "Declarations of a testator are received to corroborate direct testimony as to a will alleged to be a forgery or to have been executed under undue influence or force," etc., ". . . and in cases where fraud is the issue the statements of the testator are often admissible as declarations of a state of mind. So, also, in cases of undue influence. But such declarations are admitted to show a condition or state of mind, rather than to show undue influence of themselves. And in most jurisdictions there must be some other evidence of undue influence before they would be admitted as against the will."

Mr. Elliott, again, in volume 3, secs. 2494, writes, viz:

"Where declarations are narrations by the testator of past events, they are generally hearsay, and are not

competent for this reason, even though the events narrated constitute acts of undue influence. But declarations made at the time of the execution of the will may be admissible as part of the *res gestae*, or declarations at other times may be admissible as the best evidence of a particular fact, in some instances, or to show the testator's motives and state of mind. Declarations at other times will not, however, usually be entitled to consideration upon the question of undue influence, unless there is other evidence in that direction"—citing *Calkins* v. *Calkins*, 112 Cal., 296, 44 Pac., 577; *Donovan's Estate, In re*, 140 Cal., 390, 73 Pac., 1081; *Jones* v. *Grogan*, 98 Ga., 552, 25 S. E., 590; *Bevelot* v. *Lestrade*, 153 Ill., 625, 38 N. E., 1056; *Yorty* v. *Webster*, 205 Ill., 630, 68 N. E., 1068; *Griffith* v. *Diffenderffer*, 50 Md., 466; *Shailer* v. *Bumstead*, 99 Mass., 112; *Middleditch* v. *Williams*, 45 N. J. Eq., 726, 17 Atl., 826, 4 L. R. A., 738; *Wiltsey's Will, In re*, 122 Iowa, 423, 98 N. W., 294; *Waterman* v. *Whitney*, 11 N. Y., 157, 62 Am. Dec., 71; *Herster* v. *Herster*, 122 Pa., 239, 16 Atl., 342, 9 Am. St. Rep., 95; *Kirkpatrick* v. *Jenkins*, 96 Tenn., 85, 33 S. W., 819. So held, whether made before or after. *Townsend's Estate, In re*, 122 Iowa, 246, 97 N. W., 1108. But see *Powers' Ex'r* v. *Powers* (Ky.), 78 S. W., 152; *Marx* v. *McGlynn*, 88 N. Y., 357; *Griffith* v. *Diffenderffer*, 50 Md., 466; *Waterman* v. *Whitney*, 11 N. Y., 157, 62 Am. Dec., 71; *Meeker* v. *Boylan*, 28 N. J. Law, 274.

The author then considers the admissibility of subse-

quent declarations and concludes the section as follows:

"In short, a testator's declarations, whether made before or after the execution of the will, aside from the time of execution itself, are admissible chiefly to show his mental condition or the real state of his affections; and they are received, rather as his own external manifestations, than as evidence of the truth or untruth of facts relative to the exertion of undue influence upon him. They may corroborate, but the issue calls for its own proof from the living. And the more remote such declarations from the time when the will was executed, the less becomes their value. Declarations impertinent to the issue, moreover, are not admissible at all"—citing *Bush* v. *Bush,* 87 Mo., 480; *Middleditch* v. *Williams,* 45 N. J. Eq., 726, 17 Atl., 826, 4 L. R. A., 738; *Herster* v. *Herster,* 122 Pa., 239, 16 Atl., 342, 9 Am. St. Rep., 95; *Pemberton's Case,* 40 N. J. Eq., 520, 4 Atl., 770; *McConnell* v. *Wildes,* 153 Mass., 487, 26 N. E., 1114; *Eastis* v. *Montgomery* (Ala., 1891), 95 Ala., 486, 11 South., 204, 36 Am. St. Rep., 227; *Ormsby* v. *Webb,* 134 U. S., 47, 10 Sup. Ct., 478, 33 L. Ed., 805.

In *Marx* v. *McGlynn and Others,* 88 N. Y., 374, Earl, J., held that diaries kept and letters written by a testator, either before or after the execution of the will, while proper evidence, as bearing upon the mental capacity, and the condition of mind of the testator, with reference to the object of his bounty, are not competent

evidence of the facts stated in them, or to prove fraud or undue influence. The court said: "They are in the nature of hearsay evidence, declarations of the deceased, which are incompetent for the purpose of defeating or destroying the will or any of its provisions. They are competent only as bearing upon the condition of mind of the testatrix, at the time of the execution of the will. Such memoranda or declarations, whether made before or after the execution of the will, are competent as bearing upon the testator's mental capacity. They are also competent as bearing upon the condition of the testator's mind, with reference to the objects of his bounty. They may be given in evidence for the purpose of showing his relations to the people around him, and to the persons named in his will as beneficiaries. They are, however, entitled to no weight, in proving external acts, either of fraud or undue influence."

Now, recurring to the charge of the court in the present case, we have already seen that his honor distinctly instructed the jury that they might look to the previous and subsequent declarations of Mrs. George, along with all the other proof in the case, for the purpose of determining what the condition of her mind was, at the time she performed the alleged testamentary act. The authorities already cited announce this rule so distinctly charged by the trial judge.

It is insisted, however, that he erred in his instruction that they could not look to these declarations as substantive evidence of undue influence, or, as he ex-

pressed it in another place, "such declarations could not be regarded as evidence of or as proving the fact of undue influence."

This review of the authorities satisfies us that the weight of opinion both of the text-writers and appellate courts is against the admission of ante-testamentary declarations to establish the fact of undue influence, and we are of opinion this is the correct rule. But it is insisted on behalf of the contestants, that there are at least two cases in this state in which this court has affirmed the contrary of this view. The case mainly relied on is *Linch* v. *Linch,* 1 Lea, 526; but, as already stated, the reported opinion of the court does not affirmatively show that any antecedent declarations were involved, or their admissibility as primary evidence of undue influence adjudged. In that case the court referred to *Beadles* v. *Alexander,* 9 Baxt., 604, as a precedent controlling its decision. An examination of *Beadles* v. *Alexander,* demonstrates that no antecedent declarations were involved, but that it related alone to declarations made by the testator, subsequent to. the execution, to establish the fact that he had signed the will in the presence of the attesting witnesses.

We are also referred to the case of *Persons, Adm'r,* v. *Hill,* Shelby Law, decided at the April term, 1898, Jackson, as holding in favor of the admissibility of previous declarations. There is no opinion or memorandum of the court extant, indicating the precise ground upon which that case was decided, and it does

115 Tenn—7

not affirmatively appear that the point for which it is now cited as a precedent, was adjudicated at all.

This question has been much mooted in the courts of very many of the States, but has never been distinctly decided in this State, so far as we are apprised by any reported opinion.

In our opinion, the great weight of authority confirms the rule, announced by the circuit judge in his instructions to the jury, that such previous declarations are always admissible for the purpose of illustrating the mental capacity of the testator and his susceptibility to extraneous influence, and also to show his feelings, intentions, and relations to his kindred and friends, but such declarations are not admissible as substantive evidence of undue influence.

The remaining assignments of error have all been considered in a written memorandum, but in the opinion of the court none of them are well taken. The main questions debated at the bar are considered in this written opinion, and for the reasons herein stated the judgment of the circuit court is affirmed.