IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

WESTERN DIVISION ·

JACKSON, APRIL TERM, 1924.

J. F. RICKETTS *et al.* v. A. B. RICKETTS.*

(*Jackson.* April Term, 1924.)

WILLS. Declarations of testator to third persons inadmissible on issue
whether will was forged.

Declarations of testator to third persons either before or after execu-
tion of alleged will not constituting part of *res gestae* are inadmis-
sible on issue whether or not will was forged.

Cases cited and approved: Hobson v. Moorman, 115 Tenn., 73; Sugden
v. St. Leonards, L. R., 1 Prob. Div., 154, 251; Den ex dem. Stevens
v. Vancleve, 4 Wash. C. C., 262; Marston v. Roe ex dem. Fox, 8 Ad.
& El., 14; Earp v. Edgington, 107 Tenn., 23.

Cases cited and distinguished: Throckmorton v. Holt, 180 U. S., 552;
Johnston v. Johnston, 1 Phillim. Eccl. Rep., 447.

---

*Headnote. Wills, 40 Cyc., p. 1313.

FROM HENDERSON.

Appeal from the Circuit Court of Henderson County
to the Court of Civil Appeals, and by *certiorari* to the

(525)

Court of Civil Appeals from the Supreme Court.—Hon. N. R. Barham, Judge.

McCorry & Anderson, E. W. Essary and Raymond Carroll, for plaintiff.

T. A. Lancaster, Jno. Shelton and Jno. F. Hall, for defendants.

Mr. Justice McKinney delivered the opinion of the Court.

This case was tried before a jury in the circuit court of Henderson county upon an issue of *devisavit vel non,* the particular question being whether the alleged will of J. G. Ricketts was a forgery. The jury sustained the will.

Upon appeal the judgment was affirmed by the court of civil appeals. The case has been brought to this court by petition for *certiorari,* and the assignments of error raise but one question, viz.: The action of the trial court in excluding certain evidence tendered by the contestants.

It should be borne in mind that the only issue was the forgery of the signature of the purported will. No question of mental incapacity or undue influence is involved. The will is alleged to have been executed on April 1, 1922, and Mr. Ricketts died on April 12, 1922.

Mr. Ricketts was survived by his second wife and by seven children, four by the first wife and three by the second. The bulk of his estate was left to the three children by the second marriage, to-wit, Bryan, McKinley and Roosevelt, and the contest was instituted by the children of the first marriage.

Ricketts v. Ricketts.

After the proponents had proven the due execution of the will, by the subscribing witnesses, the contestants introduced five or six neighbors of testator, who testified that they were acquainted with his signature, and, in their judgment, the signature to the proposed will was not his genuine signature. One expert witness who introduced who testified that the signature was a forgery.

At this juncture the contestants offered to introduce testimony, which was excluded by the trial judge, a summary of which is as follows:

By E. A. Weaver that he had a conversation with the testator on Friday before he died on the next Wednesday, in which testator told him not to honor his son Bryan's signature any more at the bank, of which the witness was cashier, and at which bank testator did business; that his son Bryan had betrayed him a number of times, and if he continued to allow him to draw upon his account he would not have a dollar in six months; that his son Bryan had forged his name to a number of notes, and that he had written him to return and take care of the notes or he was going to let them send him to the penitentiary.

By Andrew Craig that he had a conversation with testator on the day before he died, in which testator stated that he had made no will; that if he favored any of his children more than he did the others it would be Barbara; that in another conversation with testator shortly before his death testator told witness that he had furnished his two sons, Bryan and Mack, enough.

By Charlie Moore that witness had a conversation with the testator between three and five days before his death

in which testator stated to witness that he had made no will and did not intend to; that in another conversation, shortly before his death, testator told witness that he had been thinking of having his children come and divide among them equally, but that he sometimes thought that he ought to give Barbara the most.

By Mrs. Eta Moore that two days before testator died he told her that he was feeling very sick; that a man had asked him a day or two before if he had made a will, and that he told him that he had not and did not intend to; that he would let all of his children just share alike.

By Filmore Pierce that witness had a conversation with testator on Friday preceding his death on Wednesday, in which he told witness that he had made no will, and that he did not intend to make one, but that he wanted his children to have an equal division of the property, and that if he favored any of his children it would be Barbara; that in another conversation shortly before his death testator stated to witness, in response to a suggestion by the witness to leave his business in his son Bryan's hands; that Bryan had ruined the business to his sorrow, and had practically ruined him; and that Bryan had signed his name to some notes without authority and that he had made him come back to straighten the matter up.

By Ed Ferguson that in March, 1921, testator told witness that his two sons, McKinley and Bryan, had been worrying him a great deal and were giving him so much trouble that he decided that he would pull loose from them.

By Jim Montgomery that on the 7th day of April witness had a conversation with testator in which he stated

Ricketts v. Ricketts.

to witness that he had given his son Mack a drug store valued at $1,000, and his son Bryan, a $1,000 stock in a dry goods business, and that he did not intend for them to have any more of what he had; that they could work for a living or starve.

By J. P. Hopper that about a year before the death of testator he told the witness that he had made no will, but that if he should make one he would make it in favor of his daughter Barbara.

By Marion Morris that on Saturday before the testator's death on Wednesday testator told witness that he had made no will.

By Enoch McBride that several days before the death of testator he heard testator state that one Chalk had made a will leaving everything to his last wife and her children, but that he could never leave his oldest girl Barbara out of his estate; and that his youngest boy had already cost him more to raise than all the rest of his family.

In *Hobson* v. *Moorman,* 115 Tenn., 73, 90 S. W., 152, 3 L. R. A. (N. S.), 749, all of the decisions of this court dealing with the declarations of testators to third parties are collected and reviewed, and the following conclusions announced:

(1)   That declarations made by the testator subsequent to the execution of the will are incompetent to establish undue influence.

(2)   That declarations made by the testator previous to the execution of the will are admissible to show his mental incapacity and susceptibility to extraneous influences, but are inadmissible as substantive evidence to prove the fact of undue influence.

151 Tenn.—34.

(3) That declarations, both antecedent and subsequent, may be considered by the jury in determining whether testator fully comprehended and approved the will as written.

This last rule has reference to cases where the presumption of testator's knowledge of the contents of the will is overcome by the fact that he was illiterate, signed by mark, and when the draftsman was the principal beneficiary, or cases of like nature.

We are unable to see how these cases have any bearing upon the question under consideration since none of them deal with the question of forgery. If there is any analogy it is to be found in the conclusion that such declarations are not competent as substantive evidence, but only in relation to the mental *status* of the testator.

In the instant case we are not concerned with Mr. Ricketts' mental status, but with the one substantive fact as to whether he affixed his signature to the instrument in question.

We find no decision of this court dealing with this rule of evidence.

In 40 Cyc., 1311, the author says:

"Declarations of testator are usually inadmissible on an issue as to the validity of a will, unless a part of the *res gestæ,* or, as is sometimes said, unless there is no other evidence available; and they are inadmissible, especially where indefinite or remote."

In note 9 will be found a list of authorities supporting the text.

We will only quote from one of the cases, which is the leading authority upon the question. *Throckmorton*

v. *Holt,* 180 U. S., 552, 21 S. Ct., 474, 45 L. Ed., 673, in which Mr. Justice PECKHAM, speaking for the court, says:

"And first, as to forgery. The paper in question was propounded as the will of Joseph Holt.

"The facts set forth in the statement prefixed to this opinion show the case to be one of an extraordinary nature. There being no proof in regard to the history or whereabouts of the paper before it was received by the register of wills, and the evidence *pro* and *con* as to its genuineness having been received upon the trial, the question arises as to the admissibility of the various declarations of the deceased, and also of his letters to different relatives living in Kentucky and other States, which it is claimed tend to show the improbability of the deceased making such a disposition of his property as is made in the paper in controversy. (They are referred to in the statement of facts above given.) The question is, in other words, can the contestants prove by unsworn oral declarations and by letters of the deceased facts from which an inference is sought to be drawn that the disposition of the property as made in the paper is improbable, and that the paper was therefore a forgery? The decisions of the State courts as to the admissibility of this kind of evidence are not in accord. Many of them are cited in the margin. Those included in class A favor the exclusion of such evidence, while those in class B favor its admission. The principle of exclusion was favored by Chancellor Kent, and also by Justices Washington, Story, Livingston, and Thompson, all of whom once occupied seats upon the bench of this court.

"The cases cited in the two classes do not all, or even a majority of them, deal with the question of forgery, but many of them treat the subject of declarations of a deceased person upon a principle which would admit or exclude them in a case where forgery was the issue. It is not possible to comment upon each of the cases cited in these lists, without unduly extending this opinion. We can only refer to the two classes generally, and state what we think are the questions decided by them.

"In the cases contained in class A, it is held that declarations, either oral or written, made by a testator, either before or after the date of the alleged will, unless made near enough to the time of its execution to bcome a part of the *res gestæ,* are not admissible as evidence in favor of or against the validity of the will. The exception to the rule as admitted by these cases is that where the issue involves the testamentary capacity of the testator, and also when questions of undue influence over a weakened mind are the subject of inquiry, declarations of the testator made before or after, and yet so near to the time of, the execution of the will as to permit of the inference that the same state of mind existed when the will was made, are admissible for the purpose of supporting or disproving the mental capacity of the testator to make a will at the time of the execution of the instrument propounded as such. These declarations are to be admitted, not in any manner as proof of the truth of the statements declared, but only for the purpose of showing thereby what in fact was the mental condition, or, in other words, the mental capacity, of the testator at the time when the instrument in question was executed.

Ricketts v. Ricketts.

"The cases contained in class B favor generally the admission of declarations of the deceased made under similar conditions in which declarations are excluded by the cases in class A.

"If declarations of the character now under consideration are admissible when made prior to the execution of the alleged will, although not after it, then a large part of the evidence in this case as to the oral and written declarations of the deceased was properly admitted upon the issue of forgery, because such declarations may have all been made before the forgery was executed, the date of the paper not furnishing any evidence of the time when it was in fact prepared. The forger could not be permitted, by giving a date to the instrument, to fix the time subsequent to which the declarations should be excluded.

"But we see no good ground for the distinction. The reasons for excluding them after the date of the will are just as potent when they were made prior thereto. When made prior to the will, it is said they indicate an intention as to a testamentary disposition of property thereafter to be made, and that such declarations may be corroborative of the other testimony as to what is contained in the will, as is said by MELLISH, L. J., in *Sugden* v. *St. Leonards,* L. R. 1 Prob. Div., 154, 251 (a case of a lost will), or else they indicate the feeling of the deceased towards his relatives, from which an inference is sought that a testamentary provision not in accordance with such declarations would be forged. The declarations are, however, unsworn in either case, and if they are inadmissible on that ground when made sub-

sequent to the execution of the will, they would be also inadmissible when made prior to its execution. In *Den ex dem. Stevens* v. *Vancleve,* 4 Wash. C. C., 262, 265, Fed. Cas., No. 13,412, Mr. Justice WASHINGTON said that declarations of the deceased, prior or subsequent to the execution of the will, were nothing more than hearsay, and there was nothing more dangerous than their admission, either to control the construction of the instrument or to support or destroy its validity. Judge PENNINGTON concurred in those views.

"After much reflection upon the subject, we are inclined to the opinion that not only is the weight of authority with the cases which exclude the evidence both before and after the execution, but the principles upon which our law of evidence is founded necessitate that exclusion. The declarations are purely hearsay, being merely unsworn declarations, and when no part of the *res gestæ* are not within any of the recognized exceptions admitting evidence of that kind. Although in some of the cases the remark is made that declarations are admissible which tend to show the state of the affections of the deceased as a mental condition, yet they are generally stated in cases where the mental capacity of the deceased is the subject of the inquiry, and in those cases his declarations on that subject are just as likely to aid in answering the question as to mental capacity as those upon any other subject. But if the matter in issue be not the mental capacity of the deceased, then such unsworn declarations, as indicative of the state of his affections, are no more admissible than would be his unsworn declarations as to any other fact.

"When they are not a part of the *res gestæ,* declarations of this nature are excluded because they are unsworn, being hearsay only, and where they are claimed to be admissible on the ground that they are said to indicate the condition of mind of the deceased with regard to his affections, they are still unsworn declarations, and they cannot be admitted if other unsworn declarations are excluded. In other words, there is no ground for an exception in favor of the admissibility of declarations of a deceased person as to the state of his affections, when the mental or testamentary capacity of the deceased is not in issue. When such an issue is made, it is one which relates to a state of mind which was involuntary and over which the deceased had not the control of the same individual, and his declarations are admitted, not as any evidence of their truth, but only because he made them, and that is an original fact from which, among others, light is sought to be reflected upon the main issue of testamentary capacity. The truth or falsity of such declarations is not important upon such an issue (unless that for the purpose of showing delusion it may be necessary to give evidence of their falsity), but the mere fact that they were uttered may be most material evidence upon that issue. The declarations of the same man are under his control, and they may or may not reflect his true feelings, while the utterances of the man whose mind is impaired from disease or old age are not the result of reflection and judgment, but spontaneous outpourings arising from mental weakness or derangement. The difference between the two, both as to the manner and subject of the declaration, might be

obvious.  It is quite apparent therefore that declarations of the deceased are properly received upon the question of his state of mind, whether mentally strong and capable or weak and incapable, and that from all the testimony, including his declarations, his mental capacity can probably be determined with considerable accuracy.  Whether the utterances are true or false cannot be determined from their mere statement, and they are without value as proof of their truth, whether made by the sane or insane, because they are in either case unsworn declarations. . . .

"We are, however, convinced that the true rule excludes evidence of the kind we are considering.  We remain of the opinion that the declarations come within no exception to the law excluding hearsay evidence upon the trial of an action, and we think the exceptions should not be enlarged to admit the evidence.  Where the issue is not one in regard to the mental capacity of the alleged testator to make a will, his declarations upon the subject cannot be said to be declarations made against interest, such as declarations made by an individual while in possession of property, in disparagement of his absolute ownership.  Such evidence has been admitted as declarations against interest or as characterizing possession, but the same declarations made after a conveyance of the land would be inadmissible, as mere hearsay and in no degree as declarations against interest.  Declarations made by an alleged testator before or after the date of the paper are not declarations against interest, because they can have no effect upon his interest.  The will would not take effect until after his death, and be-

.fore that time he could revoke it or make another, and it would still be immaterial evidence even if he did neither.

"There is another reason why no exception should be made in favor of such evidence upon which to build a presumption or inference of forgery, and that is the inherent weakness and danger of the evidence itself. No inference is generally more uncertain or unreliable than that which is sought to be draw upon the question of the genuineness of a will from the alleged condition of a testator's mind towards relatives or others, as evidenced by his declarations. It is every day experience that declarations of that nature are to the last degree unreliable as a basis for an inference as to probable testamentary disposition of property. Those who thought by reason of such declarations that they would certainly be remembered in the will of the testator are so frequently disappointed, and that, too, in cases where there is not the remotest suspicion of forgery, that it would seem exceedingly unsafe to permit a jury to draw an inference based upon such evidence, relative to the genuine character of the instrument propounded as a will. Although admitting the evidence, yet SIR JOHN NICHOLL, in *Johnston* v. *Johnston,* 1 Phillim. Eccl. Rep., 447, 460, said: 'Parol declarations are always to be received with very great caution; in general, they are the lowest species of evidence. . . . They may on the part of the testator be insincere, or at best the mere passing thought of the moment, and are liable on the part of witnesses to be misapprehended and misrepresented. But these confidendial communications with his wife upon her

Ricketts v. Ricketts.

serious representations to him respecting so important a subject are deserving of rather more weight as evidence of the deceased's mind and intentions.'

"The common-law rules of evidence do not obtain in the ecclesiastical courts of England in regard to the proof of wills relating to personalty. 'On the contrary, the evidence bearing on those points is generally mixed up with declarations of the party, and frequently consist of such declarations alone.' (Per TINDAL, Ch. J., in exchequer chamber, 1838, in *Marston* v. *Roe ex dem. Fox*, 8 Ad. & El., 14, 56.) The unreliable character of the evidence is acknowledged, but it is taken in connection with almost any other evidence, for what it is worth. In our judgment its value is entirely too problematical at its best to cause us to make an exception to the well-considered rule of evidence prohibiting hearsay.

"The motives underlying and causing the particular provisions of a will may be so various and so hidden from observation that it is in the highest degree unsafe to draw an inference of forgery based upon declarations as to testamentary intentions which are so subject to change and which declarations may or may not represent the true feelings of the testator or even his actual testamentary intention at the time when spoken. The result is very apt to be a breaking down of the safeguards provided by statute for the proof of the due execution of a will, and to provide in place of that proof evidence which is in itself of the most unsatisfactory nature, and from such evidence permit a jury to draw a still more uncertain inference of forgery.

"We are not aware of any well-founded rule permitting such evidence on the mere ground that it is probable the

declarations were true, and therefore, though unsworn, should be received. On this ground it might equally be maintained that evidence of the declarations of a person, since deceased, in a matter regarding which he had been familiar, who had been a man of undoubted character and probity, and who had had no interest in the subject, ought to be received though not sworn to. But in such case the probability of their truth has not been regarded as sufficient to admit the declarations."

The foregoing decision was approved by this court in *Earp* v. *Edgington,* 107 Tenn., 23, 64 S. W., 40, and, in our judgment, is sound and supported by the decided weight of authority.

As stated in the Holt case, such evidence is of doubtful value.

We are impressed with the thought, as stated in some of the cases, that to allow such testimony is to open the door to fraud, and we feel that the better rule is to exclude such testimony and to confine the inquiry to the ordinary rules of evidence applicable in such cases.

It results that the decree of the court of civil appeals will be affirmed.